ROXANNE SADAT, Plaintiff-Appellant, *v.* AMERICAN MOTORS CORPO-RATION, Defendant-Appellee.

First District (2nd Division)   No. 82—1052

Opinion filed April 12, 1983.—Supplemental opinion filed on denial of rehearing May 31, 1983.

Randall D. Schmidt and Richard Henderson, both of Chicago (Edwin F. Mandel, Legal Aid Clinic, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey and Paul B. O'Flaherty, Jr., of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff Roxanne Sadat appeals from the trial court's dismissal of her complaint for a mandatory injunction. The complaint sought an order which would have compelled defendant American Motors Corporation to comply with the terms of a warranty which it extended to plaintiff in connection with her purchase of a new American Motors car. Plaintiff's sole contention on appeal is that the Magnuson-Moss Warranty Act (the Act) (15 U.S.C. sec. 2301 *et seq.* (1976)) authorizes consumers to maintain an action for an injunction to enforce the terms of a warranty without requiring them to plead or prove that irreparable harm will occur if the injunction does not issue or that the remedy at law is inadequate, and that therefore the trial court erred in dismissing her complaint for failure to plead the prerequisites for equitable relief.

On April 3, 1979, plaintiff purchased a new 1979 AMC Concord

from an AMC dealer. The car was covered by a 1979 "AMC Full 12 month/12,000 mile New Car Warranty" which was issued by defendant.

During the period that the warranty was in effect, the car exhibited several defects. The brakes often faded or were difficult to engage, the steering column vibrated excessively, the transmission slipped from park to reverse, the engine leaked oil, the car dieseled after the engine was turned off, and the passenger compartment was permeated with the smell of exhaust.

Plaintiff brought the car to the dealer on seven occasions, and the dealer's mechanics attempted to repair the various defects. None of these defects, however, were ever satisfactorily repaired.

Section 104(a)(4) of the Magnuson-Moss Warranty Act provides that a full warranty, such as the warranty in the instant case, must meet certain minimum standards, one of which is the provision that:

"if the product (or component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be)." 15 U.S.C. sec. 2304(a)(4) (1976).

After all attempts to repair the car had failed, plaintiff requested a replacement without charge. Defendant refused to replace the car, and plaintiff brought a complaint seeking a mandatory injunction which would require defendant to replace the car or give her its cash equivalent. Plaintiff's complaint also sought a judgment for costs.

On April 8, 1982, the trial court granted defendant's motion to dismiss the complaint, holding that the complaint was insufficient in that it did not allege that irreparable harm would occur if the injunction were not granted, or that there was no adequate remedy at law.

Plaintiff appeals from that order.

The sole question presented by this appeal is whether a complaint for a mandatory injunction which does not allege the traditional prerequisites for equitable relief may nevertheless state a cause of action under the Magnuson-Moss Warranty Act. (15 U.S.C. sec. 2301 *et seq.* (1976).) Plaintiff contends that the congressional intent of the Act is that consumers should be able to obtain a "statutory injunction" against warrantors who fail to fulfill obligations imposed on them by the Act, and that such relief should be granted merely on a showing that a violation of the Act has occurred. Defendant contends that the fact that equitable relief is available to consumers under the Act does not authorize the courts to dispense with the traditional requirements

for the granting of such relief.

Section 110(d) of the Act provides that:

"a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

(A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States ***." 15 U.S.C. sec. 2310(d) (1976).

Plaintiff contends that the reference to "equitable relief" in section 110(d) authorizes the court to grant a mandatory injunction against any warrantor who fails to comply with the obligations imposed by a warranty, regardless of whether irreparable harm will occur if the injunction is not issued and whether there is an adequate remedy at law. In support of this contention, plaintiff cites several cases in which statutes which specifically authorize the issuance of injunctions in order to enforce their provisions have been interpreted as requiring only a showing that the statute has been violated for the injunction to issue. Those cases are distinguishable from the instant case for two reasons.

First, the statutes which have been held to authorize the issuance of an injunction on a showing of a statutory violation alone do so in clear language. A representative example of such a statutory provision can be found in the Magnuson-Moss Warranty Act itself. Section 110(c) of the Act provides that the Attorney General or the Federal Trade Commission may bring an action

"to restrain (A) any warrantor from making a deceptive warranty with respect to a consumer product, or (B) any person from failing to comply with any requirement imposed on such person by or pursuant to this chapter, or from violating any prohibition contained in this chapter. Upon proper showing that, weighing the equities and considering the Commission's or Attorney General's likelihood of ultimate success, such action would be in the public interest and after notice to the defendant, a temporary restraining order or preliminary injunction may be granted without bond." 15 U.S.C. sec. 2310(c) (1976).

It cannot be doubted that if Congress had meant for consumers to be able to obtain permanent injunctive relief from violations of the Act on less than the traditional showing, it could have set out the showing that would be required in such actions in the same manner

that it prescribed the showing required before governmental bodies could obtain preliminary injunctive relief to restrain violations of the Act. Instead, Congress merely provided that consumers could bring an action for "equitable relief." When that provision is read together with the provision relating to the powers of the Attorney General and the Commission, it becomes apparent that the contention that the use of the succinct phrase "equitable relief" creates a dispensation from the traditional requirements of an action in equity demands a strained construction of the phrase and the provision that embodies it.

The second reason why the Act cannot be construed as authorizing the issuance of a "statutory injunction" in favor of consumers is simply that no statute has ever been construed as relaxing the requirements for the issuance of injunctive relief in actions between two private parties seeking to enforce solely private rights. The majority of cases in which a statute has been interpreted as authorizing the issuance of an injunction on a showing of a statutory violation alone are cases in which a public official or body was the plaintiff, and where that official or body was authorized by the statute to use injunctions as a tool of enforcement. (See *People ex rel. Carpentier v. Goers* (1960), 20 Ill. 2d 272, 276, 170 N.E.2d 179; *People v. Keeven* (1979), 68 Ill. App. 3d 91, 96-97, 385 N.E.2d 804; *City of Highland Park v. County of Cook* (1975), 37 Ill. App. 3d 15, 20, 344 N.E.2d 665; see also *Commodity Futures Trading Com. v. Hunt* (7th Cir. 1979), 591 F.2d 1211, 1220, *cert. denied* (1979), 442 U.S. 921, 61 L. Ed. 2d 290, 99 S. Ct. 2848, and cases cited therein.) In *City of Highland Park*, the court stated that while the contention that equitable relief cannot be awarded without a showing of irreparable injury

"is a sound theory where a private party is the plaintiff, it is not when a city or another public body brings the action, alleging violation of its ordinances and State statutes, with resulting damages to its residents." 37 Ill. App. 3d 15, 20.

The theory underlying the willingness of the courts to issue statutory injunctions to public bodies to restrain violations of a statute is that harm to the public at large can be presumed from the statutory violation alone. (See *People v. Keeven* (1979), 68 Ill. App. 3d 91, 96, 385 N.E.2d 804.) Although some statutes do authorize the issuance of a "statutory injunction" in favor of a private party plaintiff (see, *e.g.*, Ill. Rev. Stat. 1981, ch. 85, par. 1245), such statutes uniformly deal with situations in which the defendant is a public body or official which must be restrained from acting in a fashion which would violate the statute which prescribes the duties and powers of the body or official. (See *Oscar George Electric Co. v. Metropolitan Fair & Exposi-*

*tion Authority* (1982), 104 Ill. App. 3d 957, 965, 433 N.E.2d 958; *Atchison, Topeka & Santa Fe Ry. Co. v. Lennen* (10th Cir. 1981), 640 F.2d 255, 259-60.) As we previously noted, there are apparently no cases in which a court interpreted a statute as authorizing a "statutory injunction" in a situation where both the plaintiff and the defendant were private parties litigating private rights.

A situation that is analogous to that presented by the instant case may be found in *Rondeau v. Mosinee Paper Corp.* (1975), 422 U.S. 49, 45 L. Ed. 2d 12, 95 S. Ct. 2069. In that case, the defendant acquired a substantial number of shares of stock of the plaintiff company in violation of the disclosures requirements of the Williams Act (15 U.S.C. sec. 78m(d)(1) (1976), amending the Securities Exchange Act of 1934). The plaintiff sought an injunction to prevent the defendant from voting any of the stock so acquired for a period of five years. The injunction was granted despite the fact that the plaintiff could show no injury, irreparable or otherwise, resulting from the defendant's failure to make the required disclosures. On appeal to the United States Supreme Court, the court first noted that the implied right of action that is available to litigants under the Securities Exchange Act of 1934 and the Securities Act of 1933 includes the right to make use of any of the procedures that are normally available to a litigant asserting a more traditional cause of action. The court stated that although an injunction could be issued in an action under those acts:

> "it by no means follows that the plaintiff in such an action is relieved of the burden of establishing the traditional prerequisites of relief ***.
>
> *** the conclusion that a private litigant could maintain an action for violation of the 1933 Act meant no more than that traditional remedies were available to redress any harm which he may have suffered; it provided no basis for dispensing with the showing required to obtain relief." 422 U.S. 49, 63, 45 L. Ed. 2d 12, 23-24, 95 S. Ct. 2069, 2078.

Likewise, we hold that Congress' express authorization for the grant of equitable relief in private actions under the Act does not mean that the plaintiff need not establish the requirements for the granting of equitable relief.

Plaintiff contends that a determination that consumers must establish irreparable injury and the inadequacy of the legal remedy in order to obtain an injunction under the Act would run counter to the intent of the Act to give consumers effective methods to enforce the terms of warranties. While it is true that the average consumer of mass produced goods will be unable to show that a breach of war-

ranty has caused irreparable injury and that the remedy at law is inadequate, the Act's authorization of equitable relief is hardly the only, or the most effective, remedial mechanism contained in the Act. A consumer who successfully brings an action under the Act may be awarded costs and attorney fees for the action under section 110(d)(2). (15 U.S.C. sec. 2310(d)(2) (1976).) The Act also allows consumers with small claims to aggregate their claims in order to meet the jurisdictional amount necessary to maintain a class action in district court. Therefore, although the average consumer would be limited to an action for damages alone under the Act, the maintenance of that action is far more practical than the maintenance of a more traditional cause of action seeking a similarly modest recovery. Therefore, we find that our determination that a consumer must prove the traditional prerequisites for equitable relief does not run counter to the intent of the Act or in any way rob it of remedial effect.

For the reasons expressed herein, the judgment of the circuit court is affirmed.

Affirmed.

DOWNING, P.J., and PERLIN, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE STAMOS delivered the opinion of the court:

The points raised in plaintiff's petition for rehearing prompt us to clarify two portions of our original opinion.

■ First, we shall expand on our view of the nature of the right to "refund or replacement" created by section 104(a)(4) of the Act. That section sets forth the minimum standards which must be met by any full warranty offered in connection with the sale of consumer goods. Although plaintiff contends that this section, read together with the authorization of an action for "equitable relief" contained in section 110(d), authorizes the grant of a mandatory injunction requiring the replacement or refund of the purchase price of a defective product covered by a warranty regardless of whether the remedy at law is inadequate or the harm is irreparable, we do not agree. We view section 104(a)(4) as creating a contractual right on the part of consumers for the replacement of or refund of the purchase price of defective products which are covered by a full warranty. The warrantor's failure to allow the consumer to elect replacement or refund gives rise to an action at law for breach of warranty in which the con-

sumer must prove only that a defect in the product exists which the warrantor was unable to repair after a reasonable number of attempts. Thus, the elements of the consumer's action for breach of warranty are defined by the contractual rights which are created by this section. In the instant case, plaintiff's complaint, though styled as a complaint for a mandatory injunction, is better viewed as a complaint for specific performance of the "refund or replacement" provision of her warranty. The existence of this contractual right, however, does not mean that the right is specifically enforceable without reference to the traditional prerequisites of equitable relief.[1]

■ Therefore, we view Congress' authorization of an action for equitable relief in section 110(d) as authorizing private actions by consumers to enforce the contractual rights created by the Act to the same extent as they would be able to enforce contractual rights at common law. As was noted in our original opinion, other provisions of the Act make the maintenance of an action under the Act significantly easier and financially more feasible than the maintenance of similar actions at common law.

■ Plaintiff also points out that although our original opinion indicates that no statute authorizes the issuance of a statutory injunction between private parties seeking to enforce private rights, title VII of the Civil Rights Act of 1964 (42 U.S.C. sec. 2000e *et seq.* (1976)) authorizes the issuance of an injunction in actions between private parties after the plaintiff has shown that unlawful and discriminatory employment practices have taken place. (See 42 U.S.C. sec. 2000e–5(g) (1976).) However, injunctive relief is available to private party plaintiffs under that statute only when the plaintiff has exhausted all administrative remedies; when administrative action is still pending, the plaintiff must prove that irreparable harm will result if an injunction is not issued. (See *Middleton-Keirn v. Stone* (5th Cir. 1981), 655 F.2d 609, 611-12.) The plaintiff in such a situation can be seen as acting not only on his own behalf, but also in the stead of an administrative agency which has declined to take action. Additionally, the willingness of the Federal courts to presume the existence of irreparable harm in such cases is a reflection of the gravity of the evil

---

[1]In this connection, we note that it is by no means certain that the parties to a contract may make the provisions of the contract specifically enforceable by expressly providing that the contract shall be enforceable by specific performance. A grant of specific performance may still be precluded by the presence of an adequate remedy at law and an absence of irreparable harm. See Dobbs, Remedies sec. 12.5, at 825 (1973); MacNeil, *Power of Contract and Agreed Remedies*, 47 Cornell L.Q. 495, 520-23 (1962).

which title VII seeks to remedy:

"Whenever a qualified Negro employee is discriminatorily denied a chance to fill a position for which he is qualified and has the seniority to obtain, he suffers irreparable injury and so does the labor force of the country as a whole." *United States v. Hayes International Corp.* (5th Cir. 1969), 415 F.2d 1038, 1045.

We are unable to say that the provisions of the Magnuson-Moss Warranty Act require the same type of sweeping pronouncement of public policy as the provisions of title VII of the Civil Rights Act of 1964, and we can see no reason why the presence of irreparable harm should be presumed whenever the terms of a warranty of a consumer product are breached.

For the reasons stated herein, plaintiff's petition for rehearing is denied.

Denied.

DOWNING, P.J., and PERLIN, J., concur.