625 A.2d 1172

**NATIONWIDE INSURANCE COMPANY as subrogee of Michael Joseph Villi, Appellant,**

**v.**

**GENERAL MOTORS CORPORATION/CHEVROLET MOTOR DIVISION and Durbiano Chevrolet Co., Appellees.**

Supreme Court of Pennsylvania.

Submitted Sept. 26, 1991.

Decided May 26, 1993.

Kirby L. Boring, Phillips & Galanter, Pittsburgh, for appellant.

Mark A. Eck, Maria Zulick, Meyer, Darragh, Buckler, Bebenek, Eck, Louis C. Long, Pittsburgh, for appellees.

Before NIX, C.J., LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

This appeal presents the issue of whether an express, 12 month/12,000 mile "New Car Limited Warranty" promising "repairs and needed adjustments" to correct manufacturing defects is a warranty that "explicitly extends to future performance of the goods" for purposes of determining when a cause of action for breach of that warranty accrues under the statute of limitations provision of the Uniform Commercial Code—Sales, 13 Pa.C.S. § 2725. We are also asked to determine whether the implied warranties of merchantability and fitness for a particular purpose so extend. For the following reasons, we hold that the express warranty does explicitly extend to future performance of the goods but that the implied warranties do not. We now reverse in part and affirm in part the decision of the Superior Court.

The essential facts are undisputed. On June 20, 1986, the Appellant, Nationwide Insurance Company, instituted this action against Appellee General Motors Corporation/Chevrolet Motor Division and Durbiano Chevrolet Company [1] by way of a Writ of Summons. According to the Complaint that was later filed, Appellant is the insurance carrier for Michael

1. Pursuant to a Consent Order of Discontinuance dated February 5, 1988, Durbiano Chevrolet Company is no longer a party to this action.

Joseph Villi, who on January 5, 1982 purchased and accepted delivery of a 1982 Chevrolet Corvette manufactured by Appellee. On November 22, 1982, the car "malfunctioned and/or exhibited a defect, caught fire and was destroyed." (Reproduced Record, R 4, ¶ 5.) Appellant paid Mr. Villi $18,473.00 for damage to the vehicle. The Complaint alleged that Appellee was liable for this amount because it had breached: (1) a written 12 month/12,000 mile warranty (Count One); (2) an implied warranty of merchantability (Count Two); and (3) an express or implied warranty of fitness for a particular purpose (Count Three).[2]

Appellee filed a motion for summary judgment, which the Court of Common Pleas of Allegheny County initially denied. Upon reargument, however, the court granted the motion on the basis that the action was barred by the four-year statute of limitations at 13 Pa.C.S. § 2725: Although the action had been filed within four years of the date the car allegedly malfunctioned or displayed a defect, it had not been filed within four years of the date of tender of delivery. The trial court deemed the cause of action to have accrued upon tender of delivery because the court specifically found that the express, 12 month/12,000 mile warranty did not "explicitly extend to future performance of the goods" and therefore that the "discovery rule" exception of § 2725 did not apply. The Superior Court affirmed in an unpublished opinion, with Judge Brosky dissenting. 396 Pa.Super. 662, 570 A.2d 1093.[3] This Court granted Appellant's Petition for Allowance of Appeal.

Section 2725 of the Uniform Commercial Code—Sales states, in pertinent part:

### § 2725. Statute of limitations in contracts for sale

2. Although Appellant did plead breach of an *express* warranty of fitness for a particular purpose, it did not plead facts indicating that such a warranty was created. Therefore, we will consider only its allegation that Appellee breached an *implied* warranty of fitness for a particular purpose.

3. The lower courts did not address Appellee's argument that it was entitled to summary judgment because the express warranty promised only the repair or replacement of defective parts and specifically excluded liability for consequential damages, and that issue is not before us.

**(a) General rule.**—An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .

**(b) Accrual of cause of action.**—A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.*

> . . . . .

13 Pa.C.S. § 2725 (emphasis added). In this case, the question is whether the warranties explicitly extended to future performance of the vehicle so that the cause of action accrued when the breach was discovered (allegedly November 2, 1982) [4], in which case the action was timely filed, or whether the general rule regarding breach of warranty applies and the cause of action accrued upon tender of delivery (January 5, 1982), so that the action was untimely filed.

In the ordinary case, a breach of warranty action accrues on, and suit must be filed within four years of, the date the seller tenders delivery of the goods, even if the breach is not apparent until after delivery has been tendered. Section 2725 sets tender of delivery as the point at which the cause of action accrues because the section "presumes that all warranties, express or implied, relate only to the condition of the goods at the time of sale." Max E. Klinger, *The Concept of Warranty Duration: A Tangled Web*, 89 Dick.L.Rev. 935, 939 (1985) (hereinafter, "*A Tangled Web* "). Such warranties are breached, if at all, when the goods are delivered but do not meet that standard. Of course, the deficiency contained in the goods may not be discovered by the buyer within four years of delivery. However,

---

**4.** This point fell within the warranty period because it was less than 12 months from the date the car was "first delivered or put in use" (R 25), and the car had been driven less than 12,000 miles (R 10).

> [i]n the usual circumstances, . . ., defects are apt to surface within that time period, and the few odd situations where this is not the case, resulting in hardship to the buyer, are thought to be outweighed by the commercial benefit derived by allowing the parties to destroy records with reasonable promptness.

William D. Hawkland, *Uniform Commercial Code Series* § 2–725:02, at 480 (1984). *See* 13 Pa.C.S. § 2725, Uniform Commercial Code Comment (four year period "is most appropriate to modern business practice" because it "is within the normal commercial record keeping period"). Thus, in breach of warranty cases the four-year statute of limitations is essentially a statute of repose.

Section 2725 contains an exception, however, for warranties that "explicitly extend to future performance of the goods" where discovery of the breach must await the time of future performance. Where such a warranty is involved, the cause of action does not accrue until "the breach is or should have been discovered." This exception has caused confusion among courts, lawyers, and commentators for years. *See generally, e.g.,* James J. White & Robert S. Summers, *Uniform Commercial Code* § 11–9 (3d ed. 1988); Klinger, *A Tangled Web,* 89 Dick.L.Rev. at 937–950 (discussing conflicting cases). Professors White and Summers have noted that "[a]lthough the time of accrual under [§ 2725] is ordinarily clear—'when tender of delivery is made'—the exception to this general rule poses interpretive difficulties." White & Summers, *Uniform Commercial Code* § 11–9, at 477. They go on to cite the very type of express warranty at issue here as an agreement that "leaves one in considerable doubt about its true meaning" and that could be interpreted either as a warranty that "explicitly extends to future performance" or as simply an agreement to repair.[5] *Id.* at 479.

Despite its ambiguity, one thing the plain language of § 2725(b) makes clear is that our analysis of whether the

---

5. The example cited is an agreement in which "the manufacturer promises to repair any defect in a car's drivetrain that occurs within two years or 24,000 miles, whichever occurs first."

written warranty "explicitly" extends to future performance must focus on the express language of that warranty. It is entitled "1982 Chevrolet New Car Limited Warranty" and provides, in part:

## WHAT IS COVERED

**CHEVROLET**

Chevrolet Motor Division, General Motors Corporation, warrants each new 1982 car.

**DEFECTS**

This exclusive warranty covers any repairs and needed adjustments to correct defects in material or workmanship.

**REPAIRS**

Your Chevrolet dealer will make the repairs or adjustments, using new or remanufactured parts.

**WHICHEVER COMES FIRST**

This warranty is for 12 months or 12,000 miles, whichever comes first.

**WARRANTY BEGINS**

The warranty period begins on the date the car is first delivered or put in use.

**NO CHARGE**

Warranty repairs and adjustments (parts and/or labor) will be made at no charge. A reasonable time must be allowed after taking the car to the dealer.

**WARRANTY APPLIES**

This warranty is for Chevrolets registered and normally operated in the United States or Canada.

(R 25.) [6] The document also states: "ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE APPLICABLE TO THIS CAR IS LIMITED IN DURATION TO THE DURATION OF THIS

6. Under "WHAT IS NOT COVERED," the warranty excludes tires; damage due to accidents, misuse, or alterations; damage from the environment; and damage due to lack of maintenance or use of the wrong fuel, oil or lubes. It also states that normal maintenance is the owner's responsibility and that "extra expenses" relating to the loss of use of the car during repairs are not covered. (R 25.)

430

WRITTEN WARRANTY. CHEVROLET SHALL NOT BE LIABLE FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES RESULTING FROM BREACH OF THIS WRITTEN WARRANTY." (Id.)

 Appellant argues that the express warranty explicitly extends to future performance of the goods because the warranty is for a specific duration, "12 months or 12,000 miles, whichever comes first." According to Appellant, such a warranty must contemplate the vehicle's future performance, at least for the stated period following delivery. Appellee, on the other hand, argues that the warranty does not explicitly extend to future performance of the goods because it does not promise that the goods will perform in a particular way in the future.[7]

7. This position has been taken by courts in other states that have considered similar automobile warranties. *See, e.g., Tittle v. Steel City Oldsmobile GMC Truck, Inc.*, 544 So.2d 883 (Ala.1989); *Voth v. Chrysler Motor Corp.*, 218 Kan. 644, 545 P.2d 371 (1976); *Stoltzner v. American Motors Jeep Corp.*, 127 Ill.App.3d 816, 82 Ill.Dec. 909, 469 N.E.2d 443 (1984) (also holding that express disclaimer of implied warranties "for any period beyond the express warranty" did not amount to explicit extension), *appeal denied; Poppenheimer v. Bluff City Motor Homes*, 658 S.W.2d 106 (Tenn.Ct.App.1983); *Muss v. Mercedes–Benz of North America, Inc.*, 734 S.W.2d 155 (Tex.Ct.App.1987). In construing the same General Motors warranty language that is at issue in this case, the Supreme Court of Alabama stated:

> This language clearly does not guarantee that the car will perform free of defects for the term of the agreement. In fact, as the court in *Voth [v. Chrysler Motor Corp.*, 218 Kan. 644, 545 P.2d 371 (1976)] recognized, the language of the guarantee anticipates that defects will occur. We, therefore, hold that the warranty provided Tittle upon the purchase of his car did not extend to the car's future performance.

*Tittle*, 544 So.2d at 891.

Decisions of the courts of other states on this issue are influential, given the purposes of the UCC. One of the explicit purposes of the Code in general is "[t]o make uniform the law among the various jurisdictions." 13 Pa.C.S. § 1103(b)(3). Section 2725 is intended specifically to "introduce a uniform statute of limitations for sales contracts." 13 Pa.C.S. § 2725, Uniform Commercial Code Comment. It would, therefore, be both acceptable and tempting simply to follow the lead of other courts. However, we decline to do so because we believe that the other courts' reasoning is flawed and would lead to absurd results if extended to its logical conclusion. For example, carrying through with the analysis described above would lead to a

We cannot accept Appellee's position for a number of reasons.[8] First, we do not read the words "explicitly extends to future performance of the vehicle" to require that the warranty make an explicit promise regarding how the goods will perform in the future. We believe that the focus of § 2725 is not on *what* is promised, but on the duration of the promise— *i.e.*, the period to which the promise extends. *Cf. Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 549 (Tex. a986) (Robertson, J., concurring) (pointing out that "explicitly" modifies the words "extends," and not the word "warranty"; therefore, it is the extension that must be explicit). Therefore, we agree with Appellant that the phrase "explicitly *extends to* future performance" can be interpreted to include a promise that, by its terms, comes into play upon, or is contingent upon, the future performance of the goods. There can be little doubt that an explicit extension has been given where the warranty itself plainly states that it "is for 12 months or 12,000 miles" and that "[t]he warranty periods *begins on* the date the car is first delivered or put in use." (R 25 (emphasis added).) Logically, a promise to repair or adjust defective parts within the first 12 months or 12,000 miles after delivery cannot be breached until the vehicle *requires* repair

situation where a consumer who purchases a vehicle with a 7 year/70,000 mile warranty would have no cause of action for breach of that warranty if the breach were to occur in the fifth year following the date of delivery. Further, with the exception of the General Motors warranty at issue in *Tittle*, the warranties involved in the cited cases were worded differently from the warranty in the case *sub judice*, and some are distinguishable on that basis. The warranties in *Stoltzner, Poppenheimer*, and *Muss*, in particular, were more clearly promises to repair or replace defective parts for the stated "warranty" period.

**8.** The Superior Court agreed with Appellee because it found this case to be similar in all significant respects to *Ranker v. Skyline Corp.*, 342 Pa.Super. 510, 493 A.2d 706 (1985). In *Ranker*, the Superior Court stated that a warranty did not explicitly extend to future performance of the goods under § 2725 where it provided that the dealer would correct all manufacturing defects reported within one year after delivery. That statement, however, was *dicta* unnecessary to the court's holding that the action was untimely filed, because the buyer in that case did not commence suit until more than four years after *discovery* of the breach. 493 A.2d at 709.

or adjustment, and "discovery of the breach must await the time of [future] performance." 13 Pa.C.S. § 2725(b).

■ Second, the essence of Appellee's position is that the document here is not a warranty, but a promise to repair or replace defective parts.[9] To be sure, the agreement here is not a model of clear draftsmanship. It could plausibly be interpreted any one of three ways: as creating a warranty that extends for 12 months or 12,000 miles, with a limited remedy of repair or adjustment for breach of the warranty; as creating not a warranty, but a repair agreement that extends 12 months or 12,000 miles; or as creating an "un-extended" warranty with a limited remedy of repair or adjustment if a breach is reported within 12 months or 12,000 miles. However, any difficulty interpreting the agreement must be resolved in favor of the non-drafting party. *See, e.g., Rusiski v. Pribonic,* 511 Pa. 383, 390, 515 A.2d 507, 510 (1986); *Central Transportation, Inc. v. Bd. of Assessment Appeals of Cambria County,* 490 Pa. 486, 496, 417 A.2d 144, 149 (1980) ("[I]t is well settled that a written agreement will be construed against the party preparing it."). It was the Appellee who drafted the document here, labeled it a "warranty," and included statements such as: "Chevrolet Motor Division, General Motors Corporation, *warrants* each new 1982 car" and "This *warranty* is for 12 months or 12,000 miles, whichever comes first." (R 25 (emphasis added).) If the drafter did not intend the document to operate as a warranty—and, more importantly for our purposes, if it did not intend the warranty to "[be] for 12 months or 12,000 miles," (R 25)—then it should have stated so more clearly.

Moreover, Appellee's attempt to argue, in essence, that this is not really a warranty reveals the internal inconsistency, and

---

9. Appellee never explicitly argues that the document is not a warranty. Indeed, having drafted the document and labeled it a warranty, Appellee would be hard-pressed to so argue. Instead, Appellee argues, somewhat disingenuously, that this is not a "performance warranty," but a "repair warranty." Section 2725 draws no such distinction. In addition, although Appellee argues that the document makes no promise regarding the condition or performance of the vehicle, its statement that it "warrants each new 1982 car" could be read to provide otherwise.

hence the weakness, in its position. On the one hand, Appellee's position depends upon calling the document a warranty, because only then can it argue that the cause of action accrued upon tender of delivery. *See* 13 Pa.C.S. § 2725(b). On the other hand, Appellee argues that the "warranty" promises nothing about the condition or performance of the car, but is simply a promise to repair or replace defective parts. If that were the case, then the cause of action would not accrue until the promise to repair were breached. *Id.*

We recognize that the document does not create a classic warranty that fits neatly within the UCC view of warranties. Although it is a "promise made by the seller to the buyer which relates to the goods," 13 Pa.C.S. § 2313(a)(1) ("Express warranties by affirmation, promise, description or sample"),[10] it does not "express[ly] warran[t] that the *goods* shall conform to the ... promise," *id.* (emphasis added). However, even if "repair or replace" warranties are viewed as remedies rather than as warranties, they do not fit strictly into the conceptual framework established by the provisions of the UCC, and a conceptually satisfactory resolution cannot be achieved. *See generally* Klinger, *A Tangled Web*, 89 Dick.L.Rev. at 943–950 (pointing out difficulty in distinguishing between limited warranty and limited remedy and in applying warranty and remedy provisions of UCC to "repair or replace" warranties). We also note that, although "repair or replace" warranties are not traditional warranties, they do fit within the modern concept of warranty. For example, the federal Magnuson–Moss Warranty Act includes in its definition of "warranty"

> any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking ...

15 U.S.C. § 2301(6)(B).

Furthermore, we will not permit Appellee and other sellers who draft similar documents to escape the consequences of

---

**10.** The other ways of creating an express warranty—by description of the goods, § 2313(a)(2), or by sample or model, § 2313(a)(3)—are not relevant to this discussion.

presenting them to the consumer as "extended warranties." There can be little question that the consumer will consider the length of any warranty offered in determining whether to purchase a particular vehicle: The consumer naturally would believe that the longer the warranty, the greater the protection, and hence, the better the value, he or she is receiving. If Appellee's position were to prevail, the protection afforded the buyer during the latter part of a warranty approaching four years would be largely illusory, as the buyer would have a very short period of time in which to bring a cause of action for breach. Moreover, the longer-term protection afforded by a warranty extending beyond four years would be completely illusory.

Finally, reading the express warranty as one that "explicitly extends to future performance of the goods" will do no violence to the purposes of § 2725. Sellers will still be able to determine the time period for which they should maintain their records, simply by adding the limitation period to the warranty period. In addition, nothing in our analysis would prevent the parties from reducing the period of limitation in accordance with § 2725(a), which provides that "[b]y the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it," provided, of course, that the period is reduced in a way that is not unconscionable. *See generally* 13 Pa.C.S. § 2302.

Because we find that the express warranty "explicitly extends to future performance of the goods" for purposes of applying 13 Pa.C.S. § 2725, we find that the cause of action alleging breach of that warranty was timely filed and reverse the decision of the Superior Court with respect to Count One of the Complaint. We express no opinion, however, as to whether a cause of action has been stated or as to the appropriate remedy for breach of the express warranty.

■ Although we find the express warranty to explicitly extend to future performance of the goods, we cannot find that the implied warranties of merchantability and fitness for a particular purpose so extend. The warranty contains the

following language: "ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICU-LAR PURPOSE APPLICABLE TO THIS CAR IS LIMIT-ED IN DURATION TO THE DURATION OF THIS WRIT-TEN WARRANTY." (R 25.) We do not read this language as explicitly extending the terms of any implied warranties, because the document states that any implied warranties are of a duration *no longer than* that of the express warranty and not that they are of a duration *equal to* that of the express warranty. The quoted language does not create implied warranties, because such warranties are created not by contract language but by operation of law in certain circumstances. *See* 13 Pa.C.S. §§ 2314 and 2315. The legal effect of the quoted language is merely to limit the protection that the law might otherwise impose. Therefore, it cannot be read as the type of language that "explicitly extends to future performance" for purposes of § 2725(b). In addition, the great weight of authority takes the position that an implied warranty, by nature, cannot "explicitly" extend to future performance. *See, e.g., General Motors Corp. v. Tate,* 257 Ark. 347, 516 S.W.2d 602, 605–606 (1974); *City of Carlisle v. Fetzer,* 381 N.W.2d 627, 629 (Iowa 1986) (collecting cases); *Safeway Stores, Inc. v. Certainteed Corp.,* 710 S.W.2d 544, 546–548 (Tex.1986) (collecting cases); White & Summers, *Uniform Commercial Code* § 11–9, at 478 n. 17 (collecting cases); Hawkland, *Uniform Commercial Code Series* § 2–2725:02, at 480; Anno., *What Constitutes Warranty Explicitly Extending to "Future Performance" for Purposes of UCC § 2–725(2),* 93 A.L.R.3d 690, § 2 (collecting cases).

Because the implied warranties do not explicitly extend to future performance of the car, we conclude that Counts Two and Three of the complaint, alleging breach of implied warranties, were filed too late.

Accordingly, we reverse the decision of the Superior Court as to Count One and affirm as to Counts Two and Three. The case is remanded to the Court of Common Pleas of Allegheny County for further proceedings consistent with this opinion.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

ZAPPALA, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent. I would hold that the implied warranties of merchantability and fitness for a particular purpose also extend to the future performance of the vehicle because these implied warranties are expressly linked temporally to the express warranty by the following language contained in the express warranty at issue: "ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTIC-ULAR PURPOSE APPLICABLE TO THIS CAR IS LIMIT-ED IN DURATION TO THE DURATION OF THIS WRIT-TEN WARRANTY," (Reproduced Record at R25). Accordingly, I would reverse the decision of the Superior Court as to Counts One, Two and Three, and remand to the Court of Common Pleas.

PAPADAKOS, J., joins this dissenting opinion.

ZAPPALA, Justice, dissenting.

I am compelled to dissent from the opinion of the Court because I believe a number of serious flaws in the reasoning lead the Court to an incorrect result.

First, the majority finds that the warranty in this case, by specifying a 12 month/12,000 mile duration, "explicitly extends to future performance of the goods." See Opinion at 431. I do not follow the logic. Granted, a warranty that explicitly extends to *future* performance of goods will by definition in most cases specify a certain time period. It does not follow, however, that because a certain time period is specified a warranty necessarily applies to future *performance of the goods*. The scope of the warranty—*what* is promised—may be something other than a representation about how the goods will perform and yet still contain a specified time period.

Here, the promise is to repair or adjust defective parts for 12 months or 12,000 miles. This is not the same as a promise

that the car and its parts will remain free of defects for 12 months or 12,000 miles. The latter promise "explicitly extends to future performance of the goods;" the former promise does not.

The majority applies a faulty grammatical analysis of the phrase "where a warranty explicitly extends to future performance of the goods" to expand the reach of 13 Pa.C.S. § 2725(b). It is true that the adverb "explicitly" modifies the verb "extends" and not the noun "warranty," and thus it is the extension that must be explicit. In this context, however, the verb "extend" does not merely describe temporal duration, as the majority suggests. Rather, it describes scope or application. The conceptual difficulty with this case is that the Appellant characterized the warranty as a representation "that said vehicle would be free from defects in material and workmanship, for at least 12 months or 12,000 miles," Complaint ¶ 8, in order to bring this action within the exception of 13 Pa.C.S. § 2725(b), when in fact the warranty was not so worded.

Second, the majority, states that "the essence of Appellee's position is that the document here is not a warranty, but a promise to repair or replace defective parts." Opinion at 1176. In doing so, it sets up a straw man, mis-characterizing the Appellee's position in order to more easily refute it. The essence of the Appellee's argument is not that the document is not a warranty, but that it is not a warranty within the definition of 13 Pa.C.S. § 2313.[1]

In the Uniform Commercial Code, the term "warranty" is given a very specific definition. "Any affirmation of fact or promise made by the seller to the buyer *which relates to the*

---

1. The majority also errs in perceiving an internal inconsistency in the appellee's argument based on its erroneous characterization of the argument. The appellee argues that if the warranty is construed as a promise about the quality or condition of the car, it does not "explicitly extend to future performance," therefore an action under that theory had to be commenced within four years of the date of delivery. If, however, the warranty is construed as a promise to repair, I believe the Appellee would concede that the four year limitation would not have commenced until this promise had been breached, *if the complaint had alleged this as the basis for the action.*

*goods* and becomes a basis of the bargain creates an express warranty that *the goods shall conform* to the affirmation or promise." 13 Pa.C.S. § 2313(a)(1) (emphasis added). Likewise, "[a]ny description of the goods which is made a part of the bargain creates an express warranty that the goods shall conform to the description," 13 Pa.C.S. § 2313(a)(2), and "[a]ny sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model." 13 Pa.C.S. § 2313(a)(3).

A warranty, in this sense, establishes as a term of the agreement certain qualities of the goods being sold. If the goods actually delivered do not possess such qualities, the buyer has remedies for breach of warranty. It is thus entirely sensible that in setting out when a cause of action accrues, the Code states that "[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." 13 Pa.C.S. § 2725(b). Since a warranty as defined by the Code is a promise as to qualities of the goods, if the goods, when tendered, possess the qualities promised, the warranty has been satisfied; if the goods, when tendered, do not possess the promised qualities, the warranty has been breached. In the limited case where the promise is that the goods will have certain qualities, or will perform in a certain way, at a time beyond when the goods are delivered, it cannot be determined at the time of delivery whether the goods possess the promised qualities. Because the promise endures over a period of time, whether a breach has occurred can only be determined when the specified time has passed.

Here, in the document captioned "1982 Chevrolet New Car Limited Warranty", the seller did not promise that the car would perform without defect for twelve months or 12,000 miles; in fact, the "Limited Warranty" contained *no* specific promise or affirmation of fact relating to the car. The only promise was that any repairs and adjustments to correct

defects in materials or workmanship would be made free of charge during the specified period. This promise related to the seller's obligations under the contract, not to the quality of the goods. Although this document is a warranty in the general sense in that it guarantees or promises something, it is not a warranty as to the quality of the car or as to its performance.

Indeed, as the majority notes, "although 'repair and replace' warranties are not traditional warranties, they do fit within the modern concept of warranty," and a document such as the one involved here fits within the definition of "warranty" under the federal Magnuson–Moss Warranty Act, 15 U.S.C. § 2301(6)(b). Opinion at 432–33. This, I believe, is the ultimate source of the difficulty in this case. General Motors, selling its product in a national market, produces a standard document that includes a promise to repair or adjust defective parts. Under federal law, such a promise is properly captioned a warranty. Unfortunately, it does not "fit[ ] neatly within the UCC view of warranties." *Id.* When an action is later brought under the UCC, GM suffers the consequence of having the "difficulty interpreting the agreement," *id.* at 432, be resolved against it, the drafter.

I think it entirely unjust to apply this rule of construction in these circumstances. As noted above, the Appellant mischaracterized the nature of the warranty in order to bring it within the exception to the limitations period under § 2725(b) of the UCC. To my mind, the Appellant is as much responsible for the "difficulty interpreting the agreement" as the Appellee. Had the action been brought under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(A), the "difficulty" would not have arisen. The warranty could then have been analyzed as a promise as to the Appellee's conduct and a determination made whether the failure, or practical inability, to repair the vehicle constituted a breach of that promise.

This analysis also avoids the "problem" identified by the majority with respect to warranties of duration longer than four years. *Id.* at 431, n. 8; *id.* at 433–35. Because such warranties set forth promises as to the seller's conduct during

a specified period of time, any breach of such promise will occur, and therefore any cause of action for breach of such promise will accrue, only after the lapse of time. Thus, for example, under a seven year/seventy thousand mile "repair and adjust" warranty, if a defect appeared in the fifth year, there would no longer be an action for breach of warranty to claim that the car was not of the quality bargained for, but the seller would still be obligated by the terms of the contract to make the necessary repairs or adjustments. Refusal to do so would be actionable as a breach, the cause of action accruing at the time of the breach and the limitation period extending four years from that point.

In the case presently before the Court, if the defect was such that the car delivered was not in fact possessed of a quality that had been bargained for, a breach of warranty action pursuant to the UCC could have been maintained. Such claim, however, would have to have been brought within four years of the date of delivery. Because this action was not commenced within four years of delivery, the Appellant could no longer make such a claim. Instead, the Appellant attempted to make the seller's promise into something that it plainly is not—a guarantee of the future performance of the car—in order to bring the action within the exception of the statutory limitation period.

Had the Appellant alleged that the seller breached the promise that it had made, the action would have been timely and the grant of summary judgment would have been improper. The Appellant made no such allegation. It was not alleged that the seller refused to make repairs or needed adjustments to correct defects in material or workmanship; nor was it alleged that any such refusal was the cause of the Appellant's damages.

By obligingly adopting the Appellant's transmogrification of this action in order to secure a remedy, the majority has, I fear, thrown the entire law of warranty under the Code in Pennsylvania into confusion.

I dissent and would affirm the grant of summary judgment.