FOURTH DIVISION
 November 14, 1996

No. 1-95-2081

ELMER and JOSEPHINE COSMAN, ) Appeal from the
 ) Circuit Court of
 Plaintiffs-Appellants, ) Cook County
 )
 v. )
 ) 94 L 4225
FORD MOTOR COMPANY, a foreign )
corporation, GEORGIE BOY MANUFACTURING )
COMPANY, INC., a foreign corporation, )
and MOTORHOMES UNLIMITED, INC., an )
Illinois corporation, ) Honorable
 ) Joseph Casciato,
 Defendants-Appellees. ) Judge Presiding.

 JUSTICE CAHILL delivered the opinion of the court:
 We here enter the complex world of warranties to repair
motor vehicles and impact upon them under the federal Magnuson-
Moss Act (15 U.S.C. 2301-12 (1994)).
 When in 1994 Elmer and Josephine Cosman sued the
manufacturers of a motor home they purchased in 1989, they
included two counts in the complaint under the Magnuson-Moss Act. 
Although the two repair warranties the Cosmans received when they
purchased their motor home ran for five and six years, the trial
court believed, not without reason, that he was compelled to
apply a four year statute of limitations under the Illinois
Uniform Commercial Code (810 ILCS 5/2-725 (West 1994)). The
court made two critical findings: 1) the repair warranties the
Cosmans received were not promises of future performance under
Illinois law, and 2) the four year statute of limitations for
actions on the sale of goods began to run when the goods were
delivered, absent a promise of future performance. The problem
with this analysis and disposition is immediately apparent: the
Cosmans are holding warranties that have not expired, but are
unable to legally enforce them. There appears to be no Illinois
decision that offers precise guidance. We believe the proper
analysis compels a finding that the word "warranty" in the
Magnuson-Moss Act is broader in meaning than the word "warranty"
in the Illinois Uniform Commercial Code. A warranty under the
Magnuson-Moss Act includes promises to repair products in the
future whose inherent reliability is not warranted. Under the
Uniform Commercial Code a warranty to make repairs in the future
is not addressed.
 The Cosman's five count complaint against Motorhomes
Unlimited, Inc., Georgie Boy Manufacturing Company, and Ford
Motor Company, filed on April 7, 1994, alleges that the Cosmans
bought a "1990 Georgie Boy Cruise Air III Motor home" from
Motorhomes Unlimited on September 12, 1989. The motor home was
built by Georgie Boy and incorporated an engine and chassis made
by Ford.
 Plaintiffs allege in their complaint that problems first
arose with the vehicle in June 1990 when the brakes were replaced
and the gear box adjusted. Then, in September 1990, the
catalytic converter and exhaust systems were replaced. 
Plaintiffs took the vehicle to Georgie Boy for more repairs in
August 1991. The steering gear box was replaced a second time in
October 1991. Despite these repairs, plaintiffs allege the
vehicle remains "defective, unsafe, and dangerous." 
 Counts I, II and V are not a subject of this appeal. Counts
III and IV allege Ford and Georgie Boy breached express and
implied warranties under the federal Consumer Product Warranty
Act, popularly known as the Magnuson-Moss Act (15 U.S.C. 2301-
12 (1994)).
 Ford and Georgie Boy filed motions to dismiss counts III and
IV under section 2-615 of the Illinois Code of Civil Procedure. 
735 ILCS 5/2-615 (West 1994). They argued that the counts were
barred by the four year statute of limitations under section 2-
725 of the Uniform Commercial Code. 810 ILCS 5/2-725 (West
1994). The trial court agreed and found that the four year
statute under section 2-725 of the Code began to run on September
12, 1989, when plaintiffs took delivery and that the action was
not filed within that limitations period. The court dismissed
the Magnuson-Moss counts with prejudice. Plaintiffs then filed
motions to reconsider and amend the complaint to include
allegations of fraudulent concealment. The court denied both
motions and found no just reason to delay enforcement or appeal
of the dismissal. 134 Ill. 2d R. 304(a). Plaintiffs appeal.
 We note that defendants' motions under section 2-615 of the
Code of Civil Procedure should have been brought under section 2-
619. Defendants rely on "affirmative matter"--the statute of
limitations--to defeat plaintiffs' claims. A section 2-619
motion to dismiss admits the legal sufficiency of the complaint,
but asserts an affirmative defense or other matter which avoids
or defeats the claim. Joseph v. Collis, 272 Ill. App. 3d 200,
206, 649 N.E.2d 964 (1995). Subsection (a)(9) permits dismissal
where "the claim asserted *** is barred by other affirmative
matter avoiding the legal effect of or defeating the claim." 735
ILCS 5/2-619(a)(9) (West 1994). Designating a motion under a
different paragraph of the Code is not fatal. See Illinois
Housing Development Authority v. Sjostrom & Sons, Inc., et al.,
105 Ill. App. 3d 247, 253, 433 N.E.2d 1350 (1982). Plaintiffs
have not been prejudiced by this error, so we will treat
defendants' motions as if they had been filed under section 2-619
of the Code. We review the dismissal of the counts de novo. 
Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112,
619 N.E.2d 732 (1993).
 The Magnuson-Moss Act creates civil actions for consumers in
state or federal court when suppliers, warrantors, or service
contractors violate the provisions of the Act. 15 U.S.C.
2310(d)(1) (1994). A consumer who prevails may elect repair,
replacement, or refund of defective parts. 15 U.S.C. 2301(10)
(1994). If the product cannot be repaired after a reasonable
number of attempts, the consumer may elect either a replacement
or a refund. 15 U.S.C. 2304(a)(4) (1994).
 The Act imposes on manufacturers and express warrantors the
same implied warranties imposed under state law only on the
buyer's immediate seller. Rothe v. Maloney Cadillac, Inc., 119
Ill. 2d 288, 518 N.E.2d 1028 (1988). The Act has no statute of
limitations. When a federal statute creates a cause of action,
but does not include a statute of limitations, federal common law
directs courts to apply the state statute of limitations for the
state action most analogous to the federal claim. DelCostello v.
International Brotherhood of Teamsters, 462 U.S. 151, 76 L. Ed.
2d 476, 103 S. Ct. 2281 (1983). 
 Ford and Georgie Boy contend that the state law action most
analogous to plaintiffs' Magnuson-Moss warranty claims is an
action for breach of warranty in a contract for sale. We agree. 
That statute is found under section 2-725 of the Uniform
Commercial Code. It reads:
 "(1) An action for breach of any contract for sale must
 be commenced within four years after the cause of
 action has accrued. By the original agreement the
 parties may reduce the period of limitation to not less
 than one year but may not extend it.
 (2) A cause of action accrues when a breach occurs
 regardless of the aggrieved party's lack of knowledge
 of the breach. A breach of warranty occurs when tender
 of delivery is made, except that where a warranty
 explicitly extends to future performance of the goods
 and discovery of the breach must await the time of such
 performance the cause of action accrues when the breach
 is or should have been discovered." 810 ILCS 5/2-725
 (West 1994).
 Ford and Georgie Boy contend that plaintiffs' claims allege
breach of warranties, the cause of action accrued upon delivery
under section 2-725(2), and the lawsuit, filed more than four
years after delivery of the vehicle, is untimely. Plaintiffs
respond that this reading leads to an unfair result because it
renders the remaining years of manufacturers' warranties of more
than four years illusory and unenforceable.
 State courts, when faced with this problem--a cause of
action that expires under the Uniform Commercial Code while
express warranties are still in effect--have analyzed the problem
in different ways. One approach has been to hold that the
warranty extends to future performance under the second paragraph
of section 2-725 of the Commercial Code. See Nationwide
Insurance Co. v. General Motors Corp., 625 A.2d 1172 (1993).
 In Nationwide, the Pennsylvania Supreme Court decided a case
with facts similar to those before us, although the action was
filed under the Uniform Commercial Code, rather than the
Magnuson-Moss Act. The court held that a 12 month or 12,000
miles automobile warranty covering "any repairs and needed
adjustments to correct defects in material or workmanship"
explicitly extended to the future performance of the vehicle. 
The court, in justifying this conclusion, identified the problem
of applying warranties which outlast the four year statute of
limitations under the Uniform Commercial Code: "If Appellee's
position were to prevail ***, the longer-term protection afforded
by a warranty extending beyond four years would be completely
illusory." Nationwide, 625 A.2d at 1177-78. See also R.W.
Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818, 823 (8th
Cir. 1983) (promise to replace defective parts is a warranty of
future performance); Standard Alliance Industries, Inc. v. Black
Claussen Co., 587 F.2d 813, 820-21 (6th Cir. 1979) (one year
express warranty for repair and replacement explicitly extends to
future performance).
 Illinois courts, by contrast, have rejected this analysis in
other contexts, and construe the future performance exception in
section 2-725(2) narrowly. We require that the extension of a
warranty to "future performance" be explicit. Moorman
Manufacturing Co. v. National Tank Co., 91 Ill. 2d 69, 435 N.E.2d
443 (1982). The plaintiff in Moorman argued a promise that a
bulk tank was designed to "withstand 60 lbs. per bushel grain and
100 m.p.h. winds" was a promise of future performance, bringing
the claim within the exception to the rule that the statute of
limitations begins to run upon delivery. The court adopted the
definition of "explicit" as "[n]ot implied merely, or conveyed by
implication; distinctly stated; plain in language; clear; not
ambiguous; express; unequivocal." The court found that the
promise of performance in the now famous Moorman tank was not
explicit enough. The court held: "The mere expectation that a
product's warranty extends for the life of the product does not
delay the point at which the statute of limitations commences to
run." Moorman, 91 Ill. 2d at 94, 435 N.E.2d 443. The court
concluded that defendant's express warranty of the tank's
durability did not explicitly extend to future performance. See
also Ridle v. Sprayrite Manufacturing Co., 198 Ill. App. 3d 597,
555 N.E.2d 1272 (1990); Beckmire v. Ristokrat Clay Products Co.,
36 Ill. App. 3d 411, 343 N.E.2d 530 (1976); Wilson v. Massey-
Ferguson, Inc., 21 Ill. App. 3d 867, 315 N.E.2d 580 (1974).
 We follow this principle of narrow construction to determine
whether the warranties to repair in this case guarantee future
performance of the goods. Ford made two express warranties. The
first covers defects in the powertrain of the vehicle for six
years or 60,000 miles after the delivery date. It states:
 "Under the Limited Warranty *** Ford warrants that your
 selling dealer will repair, replace, or adjust all
 parts (expect tires) that are found to be defective in
 factory-supplied materials or workmanship. The defects
 must occur under normal use of the vehicle during the
 warranty coverage period."
 This warranty does not promise a level of performance. It
warrants only that the dealer will repair, replace, or adjust
defects if parts of the powertrain in fact do malfunction. It
does not warrant the quality of the powertrain or its
performance. Plaintiffs argue "[w]hile there may be a
theoretical difference between a warranty that the goods will
perform without defect and a warranty that the goods will
continue to perform because if they break, the warrantor will fix
them, both are similarly prospective." Illinois courts since
Moorman have rejected this reasoning and require an explicit
statement that the goods, not the warrantor, will perform in a
certain way in the future. A promise to repair parts of the
powertrain for six years is a promise that the manufacturer will
behave in a certain way, not a warranty that the vehicle will
behave in a certain way. 
 Plaintiffs also argue that the implied--as opposed to the
expressed--warranties guaranteed future performance. Plaintiffs
allege in count IV that "the motor home was impliedly warranted
to be substantially free of defects in material and workmanship,
and thereby fit for the ordinary purposes for which the motor
home was and is intended." The Magnuson-Moss Act defines an
"implied warranty" as "an implied warranty arising under State
law *** in connection with the sale by a supplier of a consumer
product." 15 U.S.C. 2301(7) (1994). Under section 2-725(2) of
the Uniform Commercial Code, an implied warranty of
merchantability only applies to the condition of the goods at the
time of sale--not to their future performance. Nelligan v. Tom
Chaney Motors, Inc., 133 Ill. App. 3d 798, 802, 479 N.E.2d 439
(1985); Stoltzner v. American Motors Jeep Corp., 127 Ill. App. 3d
816, 469 N.E.2d 443 (1984) (implied warranties do not explicitly
extend to future performance).
 A defect will breach the implied warranty, only if the
defect existed when the goods left the seller's control. The
cause of action for breach of implied warranty accrues upon
delivery under section 2-725 of the Commercial Code. We believe
the trial court properly dismissed plaintiffs' claim against Ford
under count IV for breach of implied warranty brought more than
four years after delivery.
 Plaintiffs argue, in the alternative, that if the six year
warranties cannot be said to apply to future performance under
the Commercial Code then the most appropriate state statute to
apply to their cause of action is found under section 13-205 or
section 13-206 of the Illinois Code of Civil Procedure. 735 ILCS
5/13-205, 5/13-206 (West 1994). Section 13-205 applies to "civil
actions not otherwise provided for" and carries a five year
limitations period. Section 13-206 applies to actions on written
contracts and carries a ten year limitations period.
 This court, in Nelligan v. Tom Chaney Motors, Inc., 133 Ill.
App. 3d 798, 479 N.E.2d 439 (1985), considered a similar
argument, but was not required to resolve it. The plaintiff in
Nelligan argued that her claim for breach of warranty brought
under the Magnuson-Moss Act was governed by the five year statute
of limitations in section 13-205 of the Code of Civil Procedure
because it was a "civil action not otherwise provided for." The
court held that the plaintiff's claim, brought more than five
years after she alleged she discovered the defect, was barred
under either the four year statute of limitations under the
Commercial Code or the five year statute of limitations under the
Code of Civil Procedure. Nelligan, 133 Ill. App. 3d at 803-04,
479 N.E.2d 439.
 The facts before us require that we address the substance of
plaintiffs' argument. The alternative statute of limitations
argument has some merit, for it is one way of overriding a result
that renders the repair warranties in this case illusory, without
making them promises of future performance. But it runs up
against the plain language of the statutes upon which plaintiffs
rely.
 Section 2-725 of the Uniform Commercial Code applies to
lawsuits for breach of contract for sale. Sections 13-205 and
13-206 of the Code of Civil Procedure specifically exclude claims
which arise from the sale of goods. They both state: "Except as
provided in Section 2-725 of the 'Uniform Commercial Code.'" 735
ILCS 5/13-205, 5/13-206 (West 1994). The promises to repair upon
which plaintiffs rely in this case arise out of and were part of
the consideration in the contract for sale of the vehicle. The
contract was a transaction for the sale of goods and is governed
by Article 2 of the Uniform Commercial Code. We find that
section 2-725 of the Commercial Code, with its four year statute
of limitations, is the most analogous state statute to
plaintiffs' federal claim because plaintiffs' action for breach
of promise to repair is based on the contract for sale of the
vehicle.
 But, we do not believe the cause alleged in count III
against Ford fails under the Code's definition of warranty so
that the action accrues upon delivery under the second paragraph
of section 2-725. We do not apply the Code's second paragraph,
which provides that the statute of limitations for a breach of
warranty accrues upon delivery, because we find that the breach
of the promise to repair which plaintiffs allege in count III is
not a "warranty" as defined by the Code.
 The Commercial Code defines express warranty to mean:
 "(a) Any affirmation of fact or promise made by
 the seller to the buyer which relates to the goods and
 becomes part of the basis of the bargain creates an
 express warranty that the goods shall conform to the
 affirmation or promise.
 (b) Any description of the goods which is made
 part of the basis of the bargain creates an express
 warranty that the goods shall conform to the
 description.
 (c) Any sample or model which is made part of the
 basis of the bargain creates an express warranty that
 the whole of the goods shall conform to the sample or
 model." 810 ILCS 5/2-313 (West 1994).
 Justice Zappala noted in his dissenting opinion in
Nationwide that "[i]n the Uniform Commercial Code, the term
'warranty' is given a very specific definition." He explained
that "[s]ince a warranty as defined by the Code is a promise as
to the qualities of the goods, if the goods, when tendered,
possess the qualities promised, the warranty has been satisfied;
if the goods, when tendered, do not possess the promised
qualities, the warranty has been breached." Nationwide, 625 A.2d
at 1180 (Zappala, J., dissenting).
 In this case, Ford warranted that it would repair defects in
the powertrain of the motor home for six years or 60,000 miles
from the date of delivery. This promise relates to Ford's
obligations under the contract, not to the quality of the goods. 
It does not fit within the definition of warranty under the
Commercial Code. Although it is a warranty made as part of the
sale of the goods in the sense that it promises something
associated with the sale, it does not "warrant" the quality of
the vehicle or its performance. While promises to repair relate
to the goods, the goods cannot "conform to the *** promise" to
repair.
 By contrast, the federal definition of "written warranty"
under the Magnuson-Moss Act includes promises to repair within
the concept of warranty. As Justice Zappala noted, "[u]nder
federal law, such a promise is properly captioned a warranty." 
Nationwide, 625 A.2d at 1180 (Zappala, J., dissenting). The
Magnuson-Moss Act defines "written warranty" as:
 "(A) any written affirmation of fact or written promise
 made in connection with the sale of a consumer product
 by a supplier to a buyer which relates to the nature of
 the material or workmanship and affirms or promises
 that such material or workmanship is defect free or
 will meet a specified level of performance over a
 specified period of time, or
 (B) any undertaking in writing in connection with the
 sale by a supplier of a consumer product to refund,
 repair, replace, or take other remedial action with
 respect to such product in the event that such product
 fails to meet the specifications set forth in the
 undertaking, which written affirmation, promise, or
 undertaking becomes part of the basis of the bargain
 between a supplier and a buyer for purposes other than
 resale of such product." 15 U.S.C. 2301(6) (1994).
 A breach of a warranty of the condition of the powertrain
would occur when the vehicle is delivered. But, Ford's promise
to repair defects in the powertrain is not a warranty of the
condition of the powertrain at the time of delivery. Ford
promised to repair defects for six years or 60,000 miles. A
breach of the promise to repair cannot occur until Ford refuses
or fails to repair the powertrain if and when it breaks. The
Magnuson-Moss Act requires the consumer to allow the warrantor a
"reasonable number of attempts *** to remedy defects" before the
consumer may elect a refund or replacement of a defective
product. 15 U.S.C. 2304(a) (1994). See Sadat v. American
Motors Corp., 114 Ill. App. 3d 376, 448 N.E.2d 900 (1983), where
the court acknowledged that under the Magnuson-Moss Act, "[t]he
warrantor's failure to allow the consumer to elect replacement or
refund gives rise to an action at law for breach of warranty in
which the consumer must prove only that a defect in the product
exists which the warrantor was unable to repair after a
reasonable number of attempts." Sadat, 114 Ill. App. 3d at 382-
83, 448 N.E.2d 900.
 The problem with the analysis of the majority in Nationwide-
-reading a repair warranty as though it were a performance
warranty to avoid an unjust result--leads to a judicial
broadening of the carefully drafted Uniform Commercial Code. A
promise to repair is simply not a promise of performance. On the
contrary, in the arms length of the market place, a promise to
repair can more honestly be read as an admission that the thing
sold might break, rather than a legally enforceable prediction
that it will never need tending to.
 Under this analysis plaintiffs should have the right to sue
for a failure to repair at any time within the life of the
warranty and within four years after the breach. Other courts to
take this approach and hold the promise to repair is an
independent obligation that is not breached until the seller
fails to repair include Long Island Lighting Co. v. IMO
Industries Inc., 6 F.3d 876 (2d Cir. 1993) and Bulova Watch Co.
v. Celotex Corp., 46 N.Y.2d 606, 389 N.E.2d 130, 415 N.Y.S.2d 817
(1979). But Cf. Tittle v. Steel City Oldsmobile GMC Truck, Inc.,
544 So.2d 883 (Ala. 1989). 
 The result we reach here does the least violence to two
legislative acts--the Uniform Commercial Code and the Magnuson-
Moss Act--drafted without an eye on the other. It preserves a
four year statute of limitations for promises that are part of a
contract for the sale of goods, while recognizing that the
Magnuson-Moss remedy for breach of a promise to repair cannot
ripen until the promise is broken and has nothing to do with the
inherent quality of the goods or their future performance.
 Under Ford's six year or 60,000 miles warranty, plaintiffs
may not claim that the vehicle was not of the quality bargained
for, but Ford is still obligated by a term of the contract to
make repairs. The refusal or failure to repair is actionable as
a breach and the cause of action accrues when the promise to
repair is breached and extends four years from that time. The
trial court erred in dismissing plaintiffs' claim in count III
based on the statute of limitations reckoned from the date of
delivery.
 The second express warranty offered by Ford is the
"Emissions Defect Warranty." Ford warrants that the "vehicle is
free from defects in materials and workmanship which would cause
it to fail to conform with applicable EPA regulations for a
period of five years or 50,000 miles, whichever occurs first." 
This warranty states not only that the vehicle is free of
emissions defects upon delivery, but also that it will remain
free of defects for five years. But plaintiffs allege in the
complaint only that the exhaust system was replaced. They do not
allege that the vehicle failed to conform to EPA emissions
standards. The emissions defect warranty is not applicable to
the case before us.
 We next address plaintiffs' allegations of breach of express
warranties by Georgie Boy. Plaintiffs allege in the complaint
that "Georgie Boy provided a written warranty for the motor
home." They state that a copy of the warranty is attached as
exhibit D. Exhibit D is a copy of three pages from Georgie Boy's
owner's manual. We consider, in our review under section 2-619,
admissions in the record and exhibits attached to the pleadings. 
Fahey v. State & Madison Property Association, 200 Ill. App. 3d
437, 558 N.E.2d 192 (1990). Our reading of the owner's manual
shows that Georgie Boy made no written warranties as defined
under section 2301 of the Magnuson-Moss Act. 15 U.S.C. 2301(6)
(1994). Plaintiffs fail to allege with specificity any written
warranties, affirmations, or promises by Georgie Boy. The trial
court properly dismissed counts III and IV against Georgie Boy.
 We reverse the dismissal of count III against Ford. We
affirm the dismissal of count III against Georgie Boy. We affirm
the dismissal of count IV against Ford and Georgie Boy.
 Affirmed in part and reversed and remanded in part.
 HOFFMAN, P.J., and S.M. O'BRIEN, J., concur.