544 So.2d 883 (1989)
Rodney K. TITTLE
v.
STEEL CITY OLDSMOBILE GMC TRUCK, INC.; and General Motors Corporation.
87-905.
Supreme Court of Alabama.
March 10, 1989.
As Modified on Denial of Rehearing April 28, 1989.
*884 S. Shay Samples, Robert D. Word III and Richard D. Stratton of Hogan, Smith, Alspaugh, Samples & Pratt, Birmingham, for appellant.
J. Fred Wood, Jr., Russell Q. Allison, and Terry McElheny of Dominick, Fletcher, Yeilding, Wood & Lloyd, Birmingham, for appellee Steel City Oldsmobile GMC Truck, Inc.
Charles L. Robinson and David W. Proctor of Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, for appellee General Motors Corp.
SHORES, Justice.
The plaintiff, Rodney K. Tittle, appeals a summary judgment entered in favor of defendants, Steel City Oldsmobile GMC Truck, Inc. (hereinafter "Steel City"), and General Motors Corporation (hereinafter "General Motors").
Tittle purchased a 1981 Oldsmobile automobile from Steel City on October 9, 1981, and accepted delivery of it the same day. With the purchase of his automobile, General Motors provided Tittle with a document entitled "1981 Oldsmobile New Car Warranty." This writing provided that Steel City, as Tittle's Oldsmobile dealer, would repair and adjust defects in material or workmanship that occurred during the first 12 months or first 12,000 miles in which the car was in use. The document provided, further, that the warranty period would begin on the date the car was first delivered or placed in service. In addition to this warranty, Tittle purchased from General Motors Acceptance Corporation (hereinafter "GMAC"), the company with whom he financed the purchase of the car, a supplemental warranty that extended coverage of the original warranty to 36 months or 36,000 miles.
After Tittle accepted the automobile, he discovered numerous defects in it and repeatedly asked Steel City and GMAC to cure the problems. When Steel City proved unable, after a number of attempts, *885 to repair the vehicle, Tittle met with the zone representative for General Motors, Don Ackerman. Tittle alleges that Mr. Ackerman, as agent for General Motors, offered to extend the existing warranty on the vehicle for an additional 12 months or 12,000 miles if Tittle would allow Steel City another opportunity to repair the defects in the vehicle. Tittle agreed, but following several unsuccessful attempts to repair the vehicle, Tittle returned the car to Steel City.
Tittle sued on January 29, 1986, in Jefferson County Circuit Court, alleging that Steel City, GMAC, and General Motors had breached their respective express warranties as well as implied warranties of merchantability and fitness. Tittle founded his claims upon the federal Consumer Product Warranty Act, known commonly as the Magnuson-Moss Act, 15 U.S.C. § 2301 et seq., and upon Alabama's version of the Uniform Commercial Code (hereinafter "U.C.C."), § 7-1-101 et seq., Ala.Code (1975). In their answers to the plaintiff's complaint, both Steel City and General Motors specifically pleaded the statute of limitations as an affirmative defense.
Steel City and General Motors filed motions for summary judgment based upon the statute of limitations defense. During the hearing on the motions, the trial judge asked the parties to present the court with additional authorities supporting their respective positions. The court requested that the parties submit these authorities on or before April 1, 1988. General Motors responded to the trial court's request by providing it with four cases. Tittle, however, filed both a supplemental brief opposing the defendants' motion for summary judgment and an affidavit containing facts not alleged at the time the court heard the summary judgment motions.
On April 4, 1988, the trial court entered summary judgment in favor of Steel City and General Motors. The court found that Tittle's claims were barred by the statute of limitations at the time his complaint was filed. The trial court specifically noted that the plaintiff's case remained pending as to defendant GMAC, but made its order final with respect to Steel City and General Motors. See, Ala.R.Civ.P. 54(b). It is from this summary judgment that the plaintiff appeals. Apparently anticipating Tittle's argument on appeal, General Motors filed a motion to strike the plaintiff's affidavit from the record, on June 20, 1988.
The issue presented this Court for review is whether the trial court erred in entering summary judgment for these two defendants on the ground that Tittle's claim for breach of an express warranty was barred by the statute of limitations. In arguing this issue, the parties raise five questions this Court must address: first, what statute of limitations applies in cases brought under the Magnuson-Moss Act or the breach of warranty claims brought under Alabama's version of the U.C.C.?; second, does Ala.Code (1975), § 8-20-12, toll the statute of limitations for breach of warranty in consumer cases until the breach is discovered?; third, does the warranty issued by General Motors explicitly extend to the future performance of the vehicle?; fourth, is a repair and replacement warranty breached upon tender of the car or upon refusal or failure to repair an alleged defect?; and fifth, was Mr. Tittle's affidavit properly submitted to the trial court and included in the record on appeal, and, if so, did the affidavit present a genuine issue of material fact precluding the trial court's summary judgment?

I.
The Magnuson-Moss Act authorizes civil actions by consumers in state or federal court when suppliers, warrantors, or service contractors violate its provisions. 15 U.S.C. § 2310(d)(1). The Act, however, does not provide a statute of limitations for claims that arise under this legislation. Where a federal statute grants a cause of action, but does not include a statute of limitations governing the scope of that statute's application, federal common law requires that the court apply the state statute of limitations governing the state action most closely analogous to the federal claim. DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, *886 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The state law action most analogous to Tittle's Magnuson-Moss warranty claim is an action for breach of warranty in a contract for sale. Thus, the statute of limitations that appropriately applies to Tittle's state breach of warranty action is the same statute of limitations that appropriately applies to his federal Magnuson-Moss claim. Under Alabama's version of the U.C.C., the statute of limitations that applies to an action for breach of any contract for sale is found in § 7-2-725, Ala.Code (1975).

II.
Section 7-2-725 provides:
"(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered; however, a cause of action for damages for injury to the person in the case of consumer goods shall accrue when the injury occurs." (Emphasis added.)
General Motors and Steel City rely upon this statute to argue: Tittle purchased his car in October 1981; the purchase constituted a contract for sale under this statute; the vehicle was tendered at the time of purchase; thus, breach occurred at the time of purchase; on the undisputed facts, Tittle sued Steel City and General Motors more than four years after he accepted delivery of the car; therefore, Tittle's cause of action is barred by the statute of limitations for breach of warranty actions.
While Tittle acknowledges that § 7-2-725 is the statute of limitations in contracts for sale, he contends that a more appropriate Code section exists regarding breach of warranty actions in cases involving the purchase of motor vehicles. Code of Alabama (1975), § 8-20-12, states in pertinent part:
"[A]ny civil action commenced under the provisions of this chapter must be brought within four years after the cause of action has accrued. The cause of action shall not have accrued until the discovery of the aggrieved party of the fact or facts constituting a violation of the provisions of this chapter." (Emphasis added.)
Tittle suggests that if § 7-2-725 and § 8-20-12 are construed with reference to one another, then a breach of warranty action will not accrue until the consumer discovers, or should have discovered, the defect. He contends that § 8-20-12 specifically states this rule, and that § 7-2-725 provides for this interpretation. We do not agree.
In order to accept Tittle's analysis, we must first accept the proposition that § 8-20-12 was intended by the legislature to apply to the purchase of consumer goods. This we can not do. The Alabama legislature passed the Motor Vehicle Franchise Act in 1981, § 8-20-1 et seq., Ala. Code (1975). At that time, the legislature declared the purpose of the Act:
"The legislature finds and declares that the distribution and sale of motor vehicles within this state vitally affect the general economy of the state and the public interest and the public welfare, and that in order to promote the public interest and the public welfare, and in the exercise of its police power, it is necessary to regulate motor vehicle manufacturers, distributors, dealers and their representatives and to regulate the dealings between manufacturers and distributors or wholesalers and their dealers in order to prevent fraud and other abuses upon the citizens of this state and to protect and preserve the investments and properties of the citizens of this state." (Emphasis added.) *887 § 8-20-2. The fundamental purpose of this statute is clear. Its purpose is not, as Tittle implies, to aid consumers, but rather to give balance to the inequality of bargaining power between individual dealers and their manufacturers. See, Carroll Kenworth Truck Sales v. Kenworth Truck Co., 781 F.2d 1520, 1525-29 (11th Cir.1986) (the Alabama Motor Vehicle Franchise Act was enacted as a counterpart to the Federal Automobile Dealers Franchise Act, 15 U.S.C. § 1221 et seq.; these acts were designed "in order to balance the power now heavily [weighted] in favor of the automobile manufacturers").
The Motor Vehicle Franchise Act deals almost exclusively with the rights and duties that exist between automobile dealers and manufacturers. The single provision of the chapter that arguably applies to consumers can be found at § 8-20-8. This section provides for the recovery of attorney fees in a breach of warranty action. Tittle argues that, by this single provision, the legislature sought to supersede the comprehensive coverage found in the U.C.C. that regulates transactions involving the sale of goods to consumers. We are not persuaded by this argument.
Section 8-20-8 simply authorizes a court of competent jurisdiction to award attorney fees whenever it determines "that either a manufacturer or new motor vehicle dealer, or both, have violated an express or implied warranty." The only reference to consumers in the body of the provision, and it is an oblique reference at best, can be found in the first sentence of the section: "Every manufacturer and new motor vehicle dealer shall fulfill the terms of any express or implied warranty concerning the sale of a new motor vehicle to the public of the line which is the subject of a contract or franchise agreement between the parties."
The only explicit reference to the term "consumer" in the Act is found in the title of § 8-20-8: "Warranty obligations of manufacturers and dealers to consumers." General rules of statutory construction, however, prohibit us from considering the title of a statute as a substantive portion of the enactment. 2A Sutherland Statutory Construction § 47.03 (4th ed. 1986) ("Although the title is part of the act, it may not be used as a means of creating an ambiguity when the body of the act itself is clear"). (We note that the original legislative enactment of § 8-20-8 carried the title "Warranty Obligations to Consumers." See Act No. 81-390, § 8, Ala. Acts 1981.) Thus, we can not infer from the term "consumer," in the title of the section, that the legislature intended to apply that term, as it is restrictively defined throughout the Code, instead of the term "public," which is the term used by the legislature in the body of the enactment. Moreover, the term "consumer" does not appear in the definitional section of this chapter. While not dispositive of the issue, the noticeable absence of the term from the definitional section, § 8-20-3, further suggests that the Act was not designed to provide a consumer protection scheme supplanting or even supplementing the breach-of-warranty provisions found in Alabama's version of the U.C.C.
Even if we assume that § 8-20-8 applies specifically to consumers, it does not mean, as Tittle suggests, that the limitations period found at § 8-20-12 is a more appropriate period to apply than the limitations period set out in § 7-2-725. On the contrary, § 8-20-12 explicitly restricts the application of its time period to "civil actions commenced under the provisions of this chapter [the Motor Vehicle Franchise Act]." Despite its numerous subparts, no provision exists within the chapter that authorizes the bringing of any complaint by the ultimate purchasers of motor vehicles. And, significantly, Tittle's complaint fails to allege a civil action that arises under the provisions of this chapter. The trial court, therefore, correctly reasoned that the four-year statute of limitations found at § 7-2-725, was not affected by the Motor Vehicle Franchise Act and applies to Tittle's claims against Steel City and General Motors.

III.
Under § 7-2-725(2), a cause of action for breach of warranty accrues when the seller tenders to the buyer the goods *888 made the basis of the warranty. Once the cause of action accrues, the statute provides a four-year limitations period in which the buyer may file suit, subject to two exceptions. First, a cause of action will not accrue, in the case of consumer goods, on a claim for damages for injury to the person until the injury occurs. And, second, where the seller of consumer goods gives the buyer an express warranty that extends to the future performance of the goods, a cause of action will not accrue until the buyer discovers or should have discovered the defect in the goods.
Tittle argues that the trial court erred in entering summary judgment in this case even if the limitations period contained in § 7-2-725 is the one that appropriately applies to his cause of action, because, he says, the warranties given him by Steel City and General Motors explicitly extended to the future performance of his automobile. Consequently, Tittle claims that his cause of action did not accrue until he discovered or should have discovered the breach of the Steel City and General Motors warranties.
While Tittle's argument has been addressed in other jurisdictions, the question of whether a so-called "repair and replacement" warranty extends to the future performance of goods, so as to fall within the limited exception set out in § 7-2-725(2), is a case of first impression for this Court. Therefore, a brief analysis of the case law interpreting this section is appropriate. Before we analyze case law, however, it is critical that we consider exactly what the warranties given Tittle purport to guarantee.
Page 2 of Tittle's warranty is entitled, "1981 Oldsmobile New Car Limited Warranty." This document provides that "Oldsmobile Division, General Motors Corporation, warrants each new 1981 car," that "this warranty covers any repairs and needed adjustments to correct defects in material or workmanship," and that "the warranty period begins on the date the car is first delivered or put in use." The warranty further provides, "your Oldsmobile dealer will make the repairs or adjustments, using new or remanufactured parts." The warranty stipulates on page 3 that "it is our intent to repair under the warranty, without charge, anything that goes wrong during the warranty period that is our fault." The warranty then distinguishes the term "defects," which "are covered [under the warranty] because we, the manufacturer, are responsible," from the term "damages," which are not covered by the warranty because the manufacturer has "no control over damage caused by such things as collision, misuse and lack of maintenance which occurs after the car is delivered." Page 4 of the warranty, under the separate heading "Emission Components Defect Warranty," further provides:
"Oldsmobile ... warrants to owners of 1981 Oldsmobile passenger cars that the car (1) was designed, built, and equipped so as to conform at the time of sale with applicable regulations of the Environmental Protection Agency, and (2) is free from defects in materials and workmanship which cause the car to fail to conform with applicable Federal Environmental Protection Agency regulations for a period of use of 50,000 miles or 5 years, whichever occurs first."
In 1976, in the leading case of Voth v. Chrysler Motor Corp., 218 Kan. 644, 545 P.2d 371 (1976), the Supreme Court of Kansas spoke to Tittle's argument. The warranty in Voth read in pertinent part:
"Chrysler Corporation warrants this vehicle to the first registered owner only against defects in material and workmanship in normal use as follows: (1) the entire vehicle (except tires) for 12 months or 12,000 miles of operation after the vehicle is first placed in service, whichever occurs first, from the date of sale or delivery thereto; and (2) the engine block, head and all internal engine parts, water pump, intake manifold, transmission case and all internal transmission parts, torque converter (if so equipped), drive shaft universal joints, rear axle and differential, and rear wheel bearings for 5 years or 50,000 miles of operation after the vehicle is first placed in service, whichever occurs first, from the date of such sale or delivery. Any part of this *889 vehicle found defective under the conditions of this warranty will be repaired or replaced, at Chrysler's option, without charge at an authorized Imperial, Chrysler, Plymouth, or Dodge dealership."
Voth, 218 Kan. at 647, 545 P.2d at 374-75 (quoting Chrysler's warranty from the record).
This warranty is similar to the warranty issued by General Motors in this case. The Kansas Supreme Court held that the Chrysler warranty did not explicitly extend to the future performance of the vehicle. Moreover, the court found that the warranty did not guarantee performance without malfunction during the term of the warranty, but warranted only that the manufacturer would repair or replace defective parts in the event the car malfunctioned. Voth, 218 Kan. at 648, 545 P.2d at 375. The Kansas court explains its rationale through a quotation from Owens v. Patent Scaffolding Co., 77 Misc.2d 992, 354 N.Y. S.2d 778 (Sup.Ct.1974), rev'd on other grounds, 50 A.D.2d 866, 376 N.Y.S.2d 948 (1975), in which an argument similar to Tittle's was rejected:
"In this case the warranty does not go to performance of the equipment. To warrant to make needed repairs to leased equipment is not a warranty extending to its future performance. All that the supplier promises is that if the equipment needs repairs he will make them. It does not promise that in the future the goods will not fall into disrepair or malfunction,... but only that if it does, the supplier will repair it. [Underlying] the warranty to make needed repairs is the assumption that the goods may fall into disrepair or otherwise malfunction. No warranty that the goods will not, is to be inferred from the warranty to make needed repairs."
Voth, 218 Kan. at 651, 545 P.2d at 378 (quoting Owens, supra, 77 Misc.2d at 999, 354 N.Y.S.2d at 785).
In articulating the distinction between a warranty to repair and a warranty extending to future performance, the court in Owens said:
"A promise to repair is an express warranty that the promise to repair will be honored [citations omitted]. The seller's warranty ... that ... [goods] `will give satisfactory service at all times' is distinguishable from the supplier's warranty to `make modifications, alterations or repairs to the component parts of the equipment' when necessary. [The words in the former warranty] go to the performance of the goods; that it `will give satisfactory service at all times.' When the time came that the [goods] did not give satisfactory service, the warranty was breached. [The former warranty] explicitly extended to future performance of the goods, and its breach could only be discovered at the time of such performance."
77 Misc.2d at 998, 354 N.Y.S.2d at 784.
In Ontario Hydro v. Zallea Systems, Inc., 569 F.Supp. 1261 (D.Del.1983), Chief Judge Latchum expressed the distinction between these two types of warranties in this manner:
"[T]he key distinction between these two kinds of warranties is that a repair or replacement warranty merely provides a remedy if the product becomes defective, while a warranty for future performance guarantees the performance of the product itself for a stated period of time. In the former case, the buyer is relying upon the warranty merely as a method by which a defective product can be remedied which has no effect upon his ability to discover his breach. In the latter instance, the buyer is relying upon the warranty as a guarantee of future performance and therefore has no opportunity to discover the breach until the future performance has been tested." (Emphasis in original.)
Ontario Hydro, at 1266.
Other courts and authorities support the same conclusion: a promise to repair is not necessarily a promise of future performance. See, Ranker v. Skyline Corp., 342 Pa.Super. 510, 493 A.2d 706 (1985) (holding that where a dealer warranted a travel trailer by agreeing to correct without charge and within a reasonable time any *890 manufacturing defects reported within one year of the trailer's original retail delivery, the warranty did not explicitly extend to the future performance of the trailer, but was directed to the condition of the trailer at delivery); Carabello v. Crown Controls Corp., 659 F.Supp. 839 (D.Colo.1987) (holding that a repair and replacement warranty did not explicitly extend to the future performance of the goods); New England Power Co. v. Riley Stoker Corp., 20 Mass. App. 25, 477 N.E.2d 1054 (1985), cert. denied, 395 Mass. 1103, 481 N.E.2d 197 (1985) (holding that a breach of a warranty to repair or replace defective parts accrues on tender of delivery and not when the manufacturer fails to repair the goods); and Allis-Chalmers Credit Corp. v. Herbolt, 17 Ohio App.3d 230, 479 N.E.2d 293, 300 (1984) (holding that a contract for sale warranting that the product was free from defects in workmanship and materials and that the manufacturer would repair or replace defective parts did not explicitly extend to the future performance of the vehicle). See also, W.D. Hawkland, Uniform Commercial Code Service, § 2-725:02 at 480 (the hardship to the buyer that may sometimes be created by the four-year limitations period as measured from tender of delivery is thought to be outweighed by the commercial benefit derived from an established limitations period).
Tittle, in response to the foregoing cases, proffers two cases that he suggests represent substantial authority from other jurisdictions directly contrary to Voth and similar cases. In the first case, Standard Alliance Industries, Inc. v. Black Clawson Co., 587 F.2d 813 (6th Cir.1978), cert. denied, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979), the seller of a forging machine, in addition to warranting specific performance levels for the operation of the machine, warranted that "the equipment manufactured by it would be free from defects in workmanship and material" for a period of one year. 587 F.2d at 816-17 (emphasis added). When the manufacturer failed, after numerous attempts, to repair the defective machinery, the buyer brought an action against the seller alleging breach of his express warranty. The Standard Alliance court held that the warranty at issue in the case extended to the future performance of the machine for a period of one year and that the buyer's cause of action accrued when the purchaser discovered or should have discovered that the machine was defective. Id., at 817.
In the second case, R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818 (8th Cir.1983), the manufacturer's warranty provided:
"Vision and spandrel glass shall be guaranteed by the glass manufacturer for a period of ten (10) years from the date of acceptance of the project to furnish and replace any unit which develops material destruction of vision between the interglass surfaces. This guarantee is for material and labor costs for replacing."
697 F.2d at 821-22 n. 2.
"Shatterproof Glass Corporation warrants its insulating glass units for a period of twenty (20) years from the date of manufacture against defects in material or workmanship that result in moisture accumulation, film formation or dust collection between the interior surfaces, resulting from failure of the hermetic seal. Purchaser's exclusive remedy and Shatterproof's `total' liability under this warranty shall be limited to the replacement of any lite failing to meet the terms of this warranty. Such replacement will be made F.O.B. Detroit to the shipping point nearest the installation."
697 F.2d 822 n. 3. The court construed these warranties as extending to the future performance of the goods for periods of 10 years and 20 years, respectively, and held that the purchaser's cause of action for breach of warranty accrued when the breach was, or should have been, discovered.
Despite the language used in the Shatterproof Glass warranties, guaranteeing for a specified period of time that a product is "free" from defects, as in Standard Alliance, seems to us altogether different from guaranteeing that product "against" defects, as in Voth. In the first instance, the manufacturer guarantees that the product possesses no defect whatsoever, *891 while in the second instance the manufacturer guarantees that where defects emerge, he will remedy them, generally by repairing or replacing the defective part. While Shatterproof Glass used the term "against" in its warranty, we reconcile the holding in that case with Voth and Standard Alliance by noting the explicit nature of the remaining language in the warranty. Had the Shatterproof Glass court held that the warranties fell outside the U.C.C. § 2-725(2) "extends to future performance" exception, then despite the 10- and 20-year periods set out in the warranties, § 2-725(1) would have terminated the plaintiff's right of action four years after tender of the goods. (Section 2-725(1) provides in pertinent part, "By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it [beyond four years from the date of tender].")
In the present case, the warranty under which Tittle pursued his claim is even more free of ambiguity than that found in Voth and the other cases. The activating language of that warranty provides: "This warranty covers any repairs and needed adjustments to correct defects in material or workmanship." This language clearly does not guarantee that the car will perform free of defects for the term of the agreement. In fact, as the court in Voth recognized, the language of the guarantee anticipates that defects will occur. We, therefore, hold that the warranty provided Tittle upon the purchase of his car did not extend to the car's future performance.
We recognize that, under the analysis adopted by this Court, one might reasonably suggest that the language of the "Emission Components Defect Warranty" places it within our definition of a warranty that extends to future performance, at least within the limited scope of that separate provision. The emissions warranty provides: "Oldsmobile ... warrants ... that the car ... is free from defects in material and workmanship which cause the car to fail to conform with applicable Federal Environmental Protection Agency regulations for a period of use of 50,000 miles or 5 years, whichever comes first." We note, however, that although he enumerates an exhaustive list of defects, Tittle never alleged in his complaint or elsewhere that his vehicle failed to conform to EPA emissions standards. Hence, this provision is not applicable to the case before us.

IV.
Tittle next contends that even if the General Motors and Steel City warranties do not extend to the future performance of the vehicle, the cause of action does not accrue until there is a refusal or failure to repair. This contention, however, directly contradicts the plain meaning of the language in § 7-2-725, which states that a cause of action for breach of any contract for sale accrues when the breach occurs and that the breach occurs upon tender of delivery, regardless of the buyer's knowledge of the breach, unless the warranty explicitly extends to future performance. We have earlier determined that Tittle's warranty does not extend to the future performance of his car. The trial court, therefore, correctly determined that Tittle's cause of action, by statute and by the express terms of his warranty, accrued at the time Steel City delivered the vehicle to him.

V.
Finally, Tittle argues that even if we affirm the lower court's rulings regarding interpretation of § 7-2-725, the trial court still erred in granting summary judgment because, he says, a material issue of fact exists as to whether the defendants are estopped to assert the statute of limitations based upon their agent's representations.
The trial court held a hearing on General Motors' and Steel City's motions for summary judgment on March 18, 1988. At that time, the trial court requested that counsel for defendants and counsel for plaintiff provide the court with additional authority pertaining to the motion involving the statute of limitations. On April 1, 1988, Tittle filed a supplemental response to the defendants' motion for summary judgment and a supplemental brief in support of his position. Tittle attached his affidavit to the *892 brief. On April 4, 1988, the trial court entered a final judgment on behalf of the appellees, General Motors and Steel City. General Motors, apparently anticipating Tittle's argument on appeal, filed a motion to strike Tittle's affidavit from the record on June 20, 1988. The trial court denied General Motors' motion on June 27, 1988.
The appellees argue that Tittle's affidavit was neither timely filed nor timely considered by the trial court when that court entered its summary judgment in favor of General Motors and Steel City. General Motors and Steel City reason, therefore, that this Court may not consider Tittle's affidavit when reviewing whether the defendants are estopped from asserting the statute of limitations. We disagree.
It is uncontroverted that Tittle submitted his affidavit on April 1, 1988, before the summary judgment was entered on April 4, 1988. It is also uncontroverted that the trial judge requested of the parties additional support for their relative positions, and that it was in response to this request that Tittle presented his affidavit and supporting brief. While Rule 56(c), Ala.R. Civ.P., suggests that a party file affidavits opposing a motion for summary judgment prior to the day of the hearing, Rule 6(d), Ala.R.Civ.P., qualifies this request by placing within the trial court's discretion the power to permit the service of affidavits at other times. Thus, the fact that Tittle filed his affidavit after the hearing on the summary judgment motions does not necessarily mean that the trial court erred to reversal in considering it. Significantly, neither General Motors nor Steel City objected to the affidavit at the time it was filed and submitted to the court. Finally, the trial court, by denying the appellees' motion to strike the affidavit, indicates that the affidavit was timely filed and properly before the court when it granted the motions for summary judgment. We therefore find that Tittle's affidavit is properly a part of the record on appeal.
Next, General Motors and Steel City argue that they should not be estopped from raising the statute of limitations defense because, they say, no evidence exists that the misrepresentations made by Mr. Ackerman were intentional or fraudulent, or that Tittle, relying on these representations, was induced not to file a lawsuit.
This Court in City of Birmingham v. Cochrane Roofing & Metal Co. [Ms. 86-1187, March 10, 1989] (Ala.1989), said:
"In Mason v. Mobile County, 410 So.2d 19 (Ala.1982), this Court held that if a defendant either fraudulently or innocently represents to the plaintiff that he will remedy a problem, and relying on these representations the plaintiff is induced not to file a lawsuit or take any action, the defendant may be estopped from raising the statute of limitations as a defense. Additionally, in Arkel Land Co. v. Cagle, 445 So.2d 858 (Ala.1983), we held that if a defendant represents that a lawsuit is unnecessary because he intends to take care of the problem he is likewise estopped from raising the statute of limitations as a defense."
Id.
Tittle states in his affidavit that in 1984 a General Motors representative, Mr. Don Ackerman, represented that Steel City would repair the defects in his vehicle; that Mr. Ackerman indicated that if Tittle would allow Steel City another opportunity to repair the car, then Ackerman would extend the warranty 12 months or 12,000 miles; and that based on Mr. Ackerman's representations, he continued to attempt to have the car repaired rather than returning the car to the appellees. We find that a jury might conceivably construe Mr. Ackerman's statements as a promise to make repairs in return for a promise not to sue.
In reviewing a disposition of a motion for summary judgment, we use the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact. Chiniche v. Smith, 374 So.2d 872 (Ala. 1979). Garrigan v. Hinton Beef & Provision Co., 425 So.2d 1091, 1093 (Ala.1983).
The principles set forth in City of Birmingham, when applied to the present facts, raise a genuine issue of material fact *893 as to whether Mr. Ackerman's statements, either innocently or fraudulently, induced Tittle to rely thereon and delay filing his lawsuit. We do not here decide whether these defendants are estopped as a matter of law from asserting the statute of limitations as a defense; rather, we hold that a fact issue exists as to whether Ackerman acted as an agent for General Motors and Steel City and made a statement that Tittle reasonably relied on in delaying the filing of this lawsuit.
We, therefore, reverse the summary judgment in favor of General Motors and Steel City.
REVERSED AND REMANDED.
HORNSBY, C.J., and HOUSTON, STEAGALL and KENNEDY, JJ., concur.

ON APPLICATION FOR REHEARING
SHORES, Justice.
Application for rehearing overruled; opinion modified.
HORNSBY, C.J., and HOUSTON, STEAGALL and KENNEDY, JJ., concur.