[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 884 
John F. Hughes and Kathryn Hughes, the plaintiffs, appeal from a summary judgment for the defendants, Hertz Corporation and two of its employees, in an action alleging fraud in the sale of a used automobile.
Sometime before May 2, 1990, Mr. Hughes visited a Hertz retail car sales lot, looking for a car to purchase. When Mr. Hughes visited the lot for the first time, he looked at the cars that were for sale. The record does not show that Mr. Hughes had any discussions with anyone from Hertz on his first visit to the lot.
Sometime later, Mr. Hughes returned to the Hertz sales lot. On this second visit, Mr. Hughes looked at a 1988 Nissan Stanza, which he ultimately purchased from Hertz, and he had a discussion with Danny Kyser, a sales agent, about the purchase of the Stanza. Mr. Hughes says that during their discussions Kyser described the Nissan Stanza as a "fine" car. Mr. Hughes had no other specific recollection of any discussion with Hertz personnel during this visit. During this second visit, Mr. Hughes took the car for a test drive.
On May 2, 1990, Mr. Hughes returned to the Hertz lot with his wife, Kathryn Hughes, to purchase the car. At this time, Mr. Hughes met with Kyser to negotiate the terms of the sale. At no time did Mr. Hughes ask whether the car had been damaged, nor was he told that the car had undergone previous repairs.
At the time of purchase, Hertz issued the Hugheses a Hertz 12-month/12,000-mile limited warranty; it was issued by William R. Wright, a salesman and manager at the Hertz dealership. This warranty provided that the power train assembly "shall be free of defects in material or workmanship under normal use and service by the purchaser." In addition to the Hertz limited warranty, the Hugheses purchased from Wright a two-year extended warranty providing "VIP Plus" coverage. That warranty provided that the Hugheses' vehicle "shall be free from defects in material and workmanship, under normal use and service." Each warranty provided that the agreement would be void if the purchasers violated the provisions of "paragraph 7" of the agreement, which stated, in pertinent part: *Page 885 
 "b. This Warranty [Service Agreement] will become void if:
 "(1) Any covered part of the Power Train Assembly [or part covered by the Service Agreement] has been repaired, altered or attended to by any person other than Hertz or its designee.
". . . .
 "(3) The Vehicle has been misused, abused, or subject to neglect.
 "(4) The Vehicle has been in an accident, fire, or other casualty."
From May 2, 1990, until September 1993, the Hugheses drove the 1988 Nissan Stanza without any problems. In September 1993, the car was involved in an accident and was taken to a repair shop. The repair shop employees informed the Hugheses of prior damage to the rear panel and frame.
In December 1993, the Hugheses sued Hertz, Kyser, and Wright, alleging fraud by misrepresentation, fraud by suppression, and deceit. The Hugheses amended their complaint to include claims for breach of express warranty under § 7-2-313, Ala. Code 1975, and breach of implied warranty under § 7-2-314. Hertz, Kyser, and Wright jointly moved for a summary judgment on the fraud claims. The trial court granted the defendants' motion and made the summary judgment final pursuant to Rule 54(b), Ala.R.Civ.P. The Hugheses appeal.
A summary judgment is proper and must be affirmed on appeal if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; McGarry v. Flournoy, 624 So.2d 1359 (Ala. 1993);Gray v. Liberty Nat'l Life Ins. Co., 623 So.2d 1156 (Ala. 1993); Fincher v. Robinson Brothers Lincoln-Mercury, Inc.,583 So.2d 256 (Ala. 1991). We review a summary judgment by the "substantial evidence" rule. Under this rule, once the movant has made a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the nonmovant must rebut this showing by presenting "substantial evidence" creating a genuine issue of material fact. "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870 (Ala. 1989);Henson v. Celtic Life Ins. Co., 621 So.2d 1268 (Ala. 1993); Ala. Code 1975, § 12-21-12(d). Reasonable doubts concerning the existence of a material fact must be resolved in favor of the nonmoving party. Henson; Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990).
To establish fraud by misrepresentation, the plaintiff must show 1) that the defendant made a misrepresentation; 2) that that misrepresentation concerned a material existing fact; 3) that the plaintiff relied on the misrepresentation; and 4) that the reliance was to the plaintiff's detriment. Ala. Code 1975, § 6-5-101; Mason v. Chrysler Corp., 653 So.2d 951 (Ala. 1995);Crowder v. Memory Hill Gardens, Inc., 516 So.2d 602 (Ala. 1987); McGowan v. Chrysler Corp., 631 So.2d 842 (Ala. 1993); Under § 6-5-101, "legal fraud" includes misrepresentations of material fact made "by mistake and innocently," as well as misrepresentations made "willfully to deceive, or recklessly without knowledge." See Young v. Serra Volkswagen, Inc.,579 So.2d 1337 (Ala. 1991).
The Hugheses base their misrepresentation claim, in part, on the statement by Kyser that the Stanza was a "fine" car. This Court has held that statements of opinion amounting to sales talk, or "puffery," are not statements concerning a material fact upon which one has a right to act and, therefore, will not support a fraud claim. Fincher v. Robinson BrothersLincoln-Mercury, Inc., 583 So.2d 256, 259 (Ala. 1991); Young v.Serra Volkswagen, Inc., 579 So.2d 1337 (Ala. 1991); Mason v.Chrysler Corp., 653 So.2d 951 (Ala. 1995); McGowan v. ChryslerCorp., 631 So.2d 842 (Ala. 1993). Considering the evidence in this case in the light most favorable to the Hugheses, we conclude that the statement that the 1988 Nissan Stanza was a "fine" car was a statement of an opinion amounting to nothing more than sales talk or "puffery," not a misstatement concerning a material fact; therefore, it will not support a fraud claim. *Page 886 
Next, the Hugheses allege that Hertz, Kyser, and Wright committed fraud by selling them warranties that, they say, were knowingly or recklessly breached at the time of issuance or purchase. The Hugheses argue that both warranties issued by Hertz were void pursuant to § 7(b)(1) of each warranty because, they say, their car had been "repaired, altered or attended to by [a] person other than Hertz or its designee"; under § 7(b)(3) because, they say, "the vehicle [had] been misused, abused, or subject to neglect"; and under § 7(b)(4) because, they say "the vehicle [had] been in an accident, fire, or other casualty." In support of their argument, the Hugheses citeTittle v. Steel City Oldsmobile GMC Truck, Inc., 544 So.2d 883
(Ala. 1989), and Rhodes v. General Motors Corp., 621 So.2d 945
(Ala. 1993).
In Tittle, the plaintiff purchased a 1981 Oldsmobile manufactured by General Motors Corporation. General Motors provided the plaintiff with a warranty under which Steel City, the Oldsmobile dealer from which the plaintiff purchased the car, was to repair and make adjustments for defects in material or workmanship that occurred during the first 12 months or the first 12,000 miles in which the car was in use. That warranty provided, "This warranty covers any repairs and needed adjustments to correct defects in material or workmanship."Tittle, 544 So.2d at 891. In addition to this warranty, Tittle purchased from General Motors Acceptance Corporation (GMAC), the company that financed the purchase or the car, a supplemental warranty that extended coverage of the original warranty to 36 months or 36,000 miles.
After the plaintiff accepted the automobile, he discovered numerous defects and repeatedly asked Steel City and GMAC to cure the problems. After several unsuccessful attempts to correct the difficulties with the vehicle, the plaintiff returned the car to the dealership and sued Steel City, GMAC, and General Motors, alleging breach of their respective express warranties and implied warranties of merchantability. The trial court entered a summary judgment in favor of the defendants.
On appeal, the plaintiff argued, in part, that the warranties provided him by General Motors and GMAC extended to the future performance of the automobile. This Court disagreed, holding that, rather than guaranteeing performance without malfunction during the term of the warranty, the warranty anticipated that failures would occur and that they would be corrected.Tittle, 544 So.2d at 891.
In Rhodes, the plaintiffs purchased a 1989 Chevrolet Cavalier automobile from the David Jones Chevrolet dealership. The car was manufactured and warranted by General Motors Corporation. Under the terms of the warranty, General Motors agreed to cover repairs to correct any defect in the materials or workmanship of the car for three years or 50,000 miles, whichever came first. After the Rhodeses purchased the automobile, they returned it to David Jones Chevrolet on three occasions for repairs. While David Jones Chevrolet had possession of the car after the third repair, Chrysler Credit Corporation repossessed it because of the Rhodeses' failure to make the scheduled payments. The Rhodeses sued, seeking damages, in part, from General Motors and David Jones Chevrolet for fraudulent misrepresentations they said had occurred during the sale of the automobile. The trial court entered a summary judgment in favor of General Motors and David Jones Chevrolet.
On appeal, the Rhodeses argued that General Motors had represented to them that the car they were purchasing was new and was without defects. They claimed that because General Motors supplied them with a "New Car Limited Warranty," General Motors was warranting that the car was new and was without defects and that because they had to bring their car in three times for repairs, the car was not "new" and was defective. This Court held that, under the authority of Tittle, the language in the warranty could not be construed as a representation that the car was, and would remain, free of defects. Rhodes, 621 So.2d at 948.
Assuming that the Stanza had been damaged and repaired before its sale to the Hugheses, Tittle and Rhodes lead us to conclude that any event described under the pertinent sections of "paragraph 7" in either warranty must occur after the warranty has *Page 887 
been issued, for that warranty to be voided. Furthermore, the plain language of each warranty provides that the "Purchaser," i.e., the Hugheses, must not violate the provisions of Paragraph 7, or else the warranty would be voided. In either event, the warranties issued to the Hugheses were not void upon issuance, so no fraud claim can be based on the sale of the warranties.
Next, the Hugheses contend that the defendants fraudulently suppressed the damage to the car. In order to withstand a defendant's properly supported motion for summary judgment on a claim of fraud by suppression, the plaintiff must offer substantial evidence 1) that the defendant had a duty to disclose material facts, 2) that the defendant concealed or failed to disclose those facts, 3) that the concealment induced the plaintiff to act; and 4) that the plaintiff's action resulted in harm to the plaintiff. Interstate Truck Leasing,Inc. v. Bender, 608 So.2d 716 (Ala. 1992); Ala. Code 1975, §6-5-102.
We must first determine whether Hertz knew, or should have known, of the damage to the car, because one can be liable for suppression only in regard to a fact of which one has knowledge. Dodd v. Nelda Stephenson Chevrolet, Inc.,626 So.2d 1288 (Ala. 1993); McGarry v. Flournoy, 624 So.2d 1359 (Ala. 1993). The Hugheses claim that the fact that Hertz executed a "damage appraisal form" for their vehicle, coupled with what they call a "slipshod" repair attempt, is circumstantial evidence from which an impartial trier of fact could infer that Hertz performed the repair, and, therefore, had knowledge of the defect. In addition, the Hugheses claim that Hertz conducted an inspection that, they say, would have revealed the damage.
Although the record does not contain substantial evidence that Hertz had performed the repairs when the car was previously damaged, and thus had notice of the damage, we find that the "damage appraisal form" and the pre-sale inspection of the car present substantial evidence from which a factfinder could infer that Hertz knew or should have known of the damage to the car. The damage appraisal form states that the vehicle to which it refers is a 1988 Nissan with the serial number "124031," which corresponds to the make and model of the Hugheses' car and to the last six digits of the vehicle identification number on the Hugheses' car. David Cater, Hertz's regional maintenance manager, testified that the damage appraisal forms are prepared when Hertz purchases from one of its licensees a rental vehicle that has damage "significant [enough] to be written up and vended out for repairs." He also testified that sometimes the form is used to document "existing damage which may never be repaired." In that situation, he testified, the form is used to "decrease the value of the car," i.e., lower the purchase price of a car when Hertz purchases it from a licensee. William McHaney, a Hertz mechanic, testified that a damage appraisal is filled out by damage appraisers, who are notified of damage to a car by the mechanic doing an inspection. He also testified that for the damage appraisal form to be filled out, the car would have to have been placed in the "body damage area" of the Hertz dealership.
Earnest L. Crepps, the Hertz city manager in Mobile, testified that after Hertz purchases an automobile for resale, the car is put on a rack and lifted off the ground and that a mechanic then changes the oil and oil filter. He said the mechanic then inspects underneath the car, "looking to see if there has been any damage." McHaney, the Hertz mechanic, testified, in regard to the Hugheses' car, that when one looks at the frame, the damage is easy to spot, and that "if you were checking [the frame] for damage, you sure would see it." There is no evidence that the Hugheses' visual inspection of the car at the time of the sale would have revealed the frame damage under the car. Based on these facts, an impartial trier of fact could infer that the damage had been done to the vehicle before to its sale to the Hugheses and that Hertz knew of, or should have known of, the damage.
We must now consider whether the defendants had a duty to disclose the damage to the vehicle. This Court has stated that a duty to communicate can arise from a confidential *Page 888 
relationship between the plaintiff and the defendant, or from the particular circumstances of the case, or from a request for information, but that mere silence in the absence of a duty to disclose is not fraudulent. Dodd v. Nelda Stephenson ChevroletInc., 626 So.2d 1288 (Ala. 1993); Hardy v. Blue Cross BlueShield of Alabama, 585 So.2d 29 (Ala. 1991); King v. NationalFoundation Life Ins. Co., 541 So.2d 502 (Ala. 1989); Curtis v.Bill Byrd Automotive, Inc., 579 So.2d 590 (Ala. 1990); Mason v.Chrysler Corp., 653 So.2d 951 (Ala. 1995); McGowan v. ChryslerCorp., 631 So.2d 842 (Ala. 1993); see Ala. Code 1975, § 6-5-102.
The Hugheses cite the following passage from Roberts v. C SSovran Credit Corp., 621 So.2d 1294, 1297 (Ala. 1993), for the proposition that Hertz and its employees had a duty to disclose the frame damage:
 "[I]f the seller, or the [seller's] agent has knowledge of specific defects that affect health or safety and the defect is not known to or readily observable by the buyer, the seller or the agent has a duty to disclose and is liable for damages for nondisclosure."
This principle has previously been applied in cases involving the sale of used real estate.[1] We hold today, however, that that principle can be applied also to the sale of a used car, if the seller knows of a defect that is likely to result in imminent danger through the vehicle's use or operation. However, examining the evidence in a light most favorable to the Hugheses, as we are required to do under our standard of review, we conclude that the Hugheses failed to present substantial evidence from which an impartial trier of fact could conclude that the Hugheses were placed in imminent danger by the earlier damage to the car. Accordingly, we must hold that the plaintiffs' evidence would not support a finding that Hertz, Kyser, or Wright had a duty to disclose the frame damage.
In addition to their claims alleging misrepresentation and suppression, the Hugheses make related claims pursuant to §6-5-103 and § 6-5-104, Ala. Code 1975, alleging deceit and fraudulent deceit, respectfully. "Deceit," under §§ 6-5-103 and -104 results from either a willful or a reckless misrepresentation or a suppression of material facts with an intent to mislead. Whitlow v. Bruno's, Inc., 567 So.2d 1235
(Ala. 1990).
The Hugheses contend that the defendants are liable under § 6-5-104 because they represented (1) that the car was a "fine" automobile, (2) that it was covered by a limited warranty, and (3) that it was eligible for warranties. The Hugheses allege that Hertz, Kyser, and Wright are liable for damages under § 6-5-103 because, they say, Hertz, Kyser, and Wright willfully misrepresented that the vehicle (1) was a "fine" automobile, (2) was free from defects in material and workmanship, (3) was eligible for the Hertz limited warranty. The Hugheses also contend that the defendants are liable under § 6-5-103 because, they say, the defendants had a duty to disclose the frame damage but concealed it instead.
The deceit claims based on § 6-5-103 and § 6-5-103 are governed by the authorities cited earlier in this opinion, and we find them to be without merit.
AFFIRMED.
KENNEDY and COOK, JJ., concur.
HOOPER, C.J., and MADDOX, J., concur in the result.
[1] See Fennell Realty Co. v. Martin, 529 So.2d 1003 (Ala. 1988);Rumford v. Valley Pest Control, Inc., 629 So.2d 623 (Ala. 1993). *Page 889