COBB, Chief Justice
(dissenting).
I dissent. The term “judicial activism” is susceptible to many meanings; it has been referred to as a “notoriously slippery term.” Frank H. Easterbrook, Do Liberals and Conservatives Differ in Judicial Activism? 73 U. Colo. L.Rev. 1401 (2002).[8] However, as this Court discusses the term in the context of the review of substantive law or statutes, see, e.g., Alabama Power Co. v. Citizens of Alabama, 740 So.2d 371 (Ala.1999), it implies a willingness on the part of the Court to invade, improperly, the province of the legislature by refusing to apply the plain meaning of the statute before us in favor of substituting language and meaning that are not otherwise present. Thus, the Court becomes a sort of “superlegislature” that imposes its particular agenda on the citizens of our State without the benefit of the usual legislative process. Certainly this is a bad thing. Not only does the Court disregard its obligations under the state and federal constitutions, but it also demonstrates an abandonment of principles that are absolutely critical to an effective system of justice. “Our system relies for its validity on the confidence of society; without a belief by the people that the system is just and impartial, the concept of the rule of law cannot survive.” People ex rel. Clancy v. Superior Court of Riverside County, 39 Cal.3d 740, 746, 705 P.2d 347, 351, 218 Cal.Rptr. 24, 28 (1985).
When judicial activism is understood as the willingness of this Court to improperly substitute itself for the legislature, this case presents a picture of judicial activism that is worth a thousand words. Section 8-20-11, Ala.Code 1975, states:
“Notwithstanding the terms, provisions, or conditions of any dealer agreement or franchise or the terms or provisions of any waiver, and notwithstanding any other legal remedies available, any person who is injured in his business or property by a violation of *284 this chapter by the commission of any unfair and deceptive trade practices, or because he refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of this chapter, may bring a civil action in a court of competent jurisdiction in this state to enjoin further violations, to recover the damages sustained by him together with the costs of the suit, including a reasonable attorney’s fee.”
(Emphasis added.) In addition to this very plain language, this Court has also discussed the legislature’s purpose in enacting the Franchise Act as “to give balance to the inequality of bargaining power between individual dealers and their manufacturers.” Tittle v. Steel City Oldsmobile GMC Truck, Inc., 544 So.2d 883, 887 (Ala.l989)(emphasis added). That is, automobile dealers in this State are to receive some protection from the inequality of bargaining power that exists in their transactions with automobile manufacturers by having their claims of violations under the Franchise Act preserved for judicial adjudication, regardless of contractual releases or waivers the dealers may be compelled to sign in order to do business.
That purpose is directly applicable to this case, a situation in which an automobile dealer has been pressured into signing a release in order to effectively transact business with a much more powerful automobile manufacturer. Here, as a result of the manufacturer’s unfulfilled promises, Edwards had the choice of executing the release or suffering financial ruin, essentially a choice “between a rock and a hard place.” In spite of the facts presented here, and in spite of the plain language of § 8-20-11 and this Court’s previous statements of law concerning the legislature’s intent as stated in § 8-20-2, the majority opinion embarks on a semantic voyage to ascertain the legislature’s “intent” by attempting to parse a meaningful distinction between concepts of “release” and “waiver,” a distinction the parties have conceded does not exist. See Edwards v. Kia Motors of America, Inc., 486 F.3d 1229, 1233 (11th. Cir.2007) (“[Djuring oral argument, both parties conceded that the terms ‘waiver’ and ‘release’ can be synonymous.”). The result of the majority’s analysis is a conclusion that the emphasized language quoted above from § 8-20-11 does not mean what it says it means. Because I cannot, on any reasonable reading of the above statutory language — particularly in light of the legislative purpose in enacting the Franchise Act — conclude that it means other than what it says, I must conclude that the release agreement does not bar Edwards’s action. In short, the majority opinion rewrites § 8-20-11 to say that certain releases and waivers do in fact operate to prevent a dealer from bringing a claim under the Franchise Act in the courts of our State. Not only does the opinion “relegislate” § 8-20-11, but it also obviates the legislature’s intent as expressed in § 8-20-2 and Tittle, supra, so as to remove the protections in the Franchise Act from the inequality in bargaining power that exists between dealers and manufacturers.
In the past, this Court operated under a duty to adhere to legal precedent without regard to the outcome of the case, and it consistently concluded that the plain language of a statute required that this Court apply the language as stated. The rule has generally been stated as follows:
“ ‘When [a] statutory pronouncement is clear and not susceptible to a different interpretation, it is the paramount judicial duty of a court to abide by that clear pronouncement.’ ”
Macon v. Huntsville Utils., 613 So.2d 318, 320 (Ala.1992) (quoting Parker v. Hilliard, 567 So.2d 1343, 1346 (Ala.1990)). This rule *285 has found application even in the recent past. See, e.g., Bright v. Calhoun, 988 So.2d 492, 498 (Ala.2008) (quoting City of Bessemer v. McClain, 957 So.2d 1061, 1074 (Ala.2006) (“ ‘To discern the legislative intent [for purposes of statutory construction], the Court must first look to the language of the statute. If, giving the statutory language its plain and ordinary meaning, we conclude that the language is unambiguous, there is no room for judicial construction.’ ”)); Boutwell v. State, 988 So.2d 1015, 1020 (Ala.2007) (“ ‘[Principles of statutory construction instruct this Court to interpret the plain language of [the] statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.’ Ex parte Pratt, 815 So.2d 532, 535 (Ala.2001).”); Cleburne County Comm’n v. Norton, 979 So.2d 766, 773 (Ala. 2007)(“ ‘ “ ‘Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ” ’ ” (quoting Tolar Constr., LLC v. Kean Elec. Co., 944 So.2d 138, 149 (Ala.2006), quoting in turn Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998), quoting in turn IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992))). I believe that the majority opinion flies in the face of this precedent and the many other cases that have espoused the principle that this Court’s paramount duty is to interpret the plain language of the law to mean what it says.
With respect to the contention that giving effect to the plain language of § 8-20-11 means that no preexisting claim can ever be settled, it is more accurate to say that giving effect to the plain language of the statute means that a manufacturer may not by weight of its greater bargaining position in compelling a franchise agreement force a dealer to give up its right to adjudicate its claims of violations of the Franchise Act. Claims may still be settled by adjudication and settlement, and claims may be forestalled by honest business practices that do not give rise to violations of the Franchise Act. The statute says what it says. Had the legislature intended to except the release of known claims from the operation of § 8-20-11, it could have done so. The plain language of the statute permits litigation alleging an unfair trade practice notwithstanding pri- or agreements. This language may not be convenient for an entity that is stronger economically and that seeks to force a weaker one into compliance with its terms by allowing a release of known claims in the context of contract negotiations, but I submit that disregarding the language and intent of the Franchise Act is the antithesis of the “strict construction” to which judicial “conservatives” give lip service. Rather, rewriting § 8-20-11 and discarding the intent of the legislature represents judicial activism, which this Court should never endorse. Because I believe that a consistent application of this Court’s principles of statutory construction is a critical component of American justice and of this Court’s credibility as an agent of that justice, I must dissent.

. See also Keenan D. Kmiec, The Origin and Current Meanings of “Judicial Activism," 92 Cal. L.Rev. 1441 (2004).