SMITH, Justice
(concurring in part and concurring in the result).
I concur in part and concur in the result. The provision at issue in this case does not warrant that there are no defects in the quality of the vehicle; instead, it expresses a promise to repair defects that may have existed at the time of delivery but that are not found until some time during the “warranty period.”
The applicable provision states as follows: “Repairs Covered: The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period....” A “defect” is a “shortcoming” or “an imperfection that impairs worth or utility.” Menicmir-Webster’s Collegiate Dictionary 326 (11th ed.2003). Both the “materials” of the car are installed and the “workmanship” is performed during the manufacturing process. If there is a “defect” in the materials installed or the workmanship during manufacturing, then that defect must naturally exist at the conclusion of the manufacturing process and at time the vehicle is delivered.
However, the provision does not stop there. It goes on to refer to the defects “occurring during the warranty period.” “Occur” and “occurring” mean “to be found or met with,” Memamr-Webster’s *114 Collegiate Dictionary 858, and “to be found to exist or appear.” The American Heritage College Dictionary 961 (4th ed.2007). Thus, the provision promises to repair defects in materials or workmanship, which must already necessarily exist immediately after the manufacturing process and at the time of delivery, when those defects appear or are found to exist. GM’s obligation to perform under the provision, according to its terms, does not exist at delivery, but only at a later time: when the defect is found, appears, or otherwise manifests itself (so long as that occurs within the “warranty period”).[6]
The Court in Tittle v. Steel City Oldsmobile GMC Truck, Inc., 544 So.2d 883 (Ala.1989), without specific analysis of the language at issue, assumed that the promise in that case was a “warranty” and that Ala.Code 1975, § 7-2-725(2), which provides that a breach of warranty accrues at delivery of the goods, thus applied.[7] However, I do not believe that the provision at issue here is a “warranty,” although it is labeled as such.[8] The various definitions of “express warranty” found in Ala.Code 1975, § 7-2-313, all relate to the inherent quality or specifications of the goods sold. The plain language of the provision in the instant case does not relate to the quality of the vehicle as delivered, and it does not promise that there are no defects in the vehicle. “This language clearly does not guarantee that the car will perform free of defects for the term of the agreement. In fact ... the language ... anticipates that defects will occur.” Tittle, 544 So.2d at 891. Instead, the provision promises the performance of a future act on the part of GM: to repair the vehicle when a defect is discovered. I agree with the following:
“[T]he failure to repair or replace is merely a breach of a contract and not a breach of a warranty, and therefore no cause of action arises until the [manufacturer] has refused to repair or replace the goods. This is because until the [manufacturer] has failed or refused to make the repairs or provide a replacement, the buyer, not being entitled to such a remedy, has no right to commence an action for damages. As a result, the action is timely brought within four years of the [manufacturer’s] failure or refusal.”
4B Lary Lawrence, Lawrence’s Anderson on the Uniform Commercial Code § 2-725:101 (3d ed.2001) (footnote omitted). Because the provision in this case is not a “warranty,” its breach did not “oceur[] when tender of delivery [was] made,” § 7-2-725(2), but instead when GM failed to perform.
Tittle did not analyze whether the “warranty” in that case was actually a “warranty” for purposes of § 7-2-725(2); instead, the Court simply assumed that it was a warranty and that § 7-2-725(2) applied. *115 Additionally, subsequent caselaw discussing or applying Tittle has similarly failed to address whether “repair warranties” were actually warranties or were contractual obligations. See, e.g., Lands v. Lull Int'l, Inc., 963 So.2d 626 (Ala.2007); Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997); Hughes v. Hertz Corp., 670 So.2d 882 (Ala.1995); and Rhodes v. General Motors Corp., 621 So.2d 945 (Ala.1993). However, to the extent Tittle requires this Court to assume that the provision in this case is a warranty for purposes of the statute of limitations found in § 7-2-725 and that the cause of action for the breach accrues at the time of delivery of the goods, I agree with the main opinion that it should be overruled.
STUART, J„ concurs.

. An alternate definition of "defect” could simply refer to a breakage that does not occur until after delivery of the vehicle; this would not change my analysis of GM's obligation under the provision.

. The warranty provision at issue in Tittle is not quoted in that case; the operative provision is merely paraphrased by the Court: "This writing [tire new-car warranty] provided that Steel City ... would repair and adjust defects in material or workmanship that occurred during the first 12 months or first 12,000 miles in which the car was in use.” Tittle, 544 So.2d at 884.

.Just as the use of the "formal words” "warrant or guarantee” are not required to create an express warranty, see Ala.Code 1975, § 7-2-313(2), the use of the word "warranty” does not necessarily create such a warranty. See Enterprise-Laredo Assocs. v. Hachar's, Inc., 839 S.W.2d 822, 831 (Tex.App.1992) ("the use of form words such as 'warranty' or 'guarantee' [does] not automatically create an express warranty”).